In re COLONIAL LIMITED PARTNERSHIP LITIGATION.

PASTERNAK

v.

COLONIAL EQUITIES CORP.

Applies in the Following Related Actions:

Matthew PASTERNAK

v.

COLONIAL REALTY/USA CORP.

Nicholas R. SALERNO

v.

Kenneth SCHWARTZ.

Karen KOMAR

v.

CITYTRUST.

Susan SEEMAN

v.

The TRAVELLERS INSURANCE CO.

Daniel McNAUGHTON

v.

CITYTRUST.

Jean NEAL

v.

ARTHUR ANDERSEN & CO.

John F. BURBANK

v.

KOSTIN & CO.

George PRATT

v.

COLONIAL REALTY II.

Paul E. HOLLAND

v.

ARTHUR ANDERSEN & CO.

Manfred SEEMAN

v.

CITYTRUST.

Stanley F. SKIBA

v.

DWELLING DEVELOPMENT CORP.

Thom OZYCZ

v.

COLONIAL REALTY II.

Stanley F. SKIBA

v.

COLONIAL REALTY II (Five Cases).

Tina DEBLOIS

v.

COLONIAL REALTY/USA CORP.

Joyce A. KERR

v.

TF DEVELOPMENT, INC.

David BRENNAN

v.

COLONIAL REALTY II.

Allen V. COLLINS

v.

COLONIAL REALTY II.

George PRATT

v.

TIG–RFA, INC.

Harry LEISER

v.

KOSTIN & CO.

Joseph CORDO

v.

COLONIAL REALTY II.

Raymond C. HANSEN

v.

COLONIAL REALTY/USA CORP.

Joyce A. KERR

v.

Malcolm GRAFF.

Salvatore V. FAULISE

v.

KOSTIN & CO.

Harry LEISER

v.

ARTHUR ANDERSEN & CO.

Stanley F. SKIBA

v.

Richard A. SIMONS.

Susan SEEMAN

v.

CITYTRUST.

Leslie DANIELS

v.

BILLINGS MANAGEMENT CO.

Stanley F. SKIBA

v.

CITYTRUST.

Paul KENNETT

v.

COLONIAL REALTY II.

Civ. A. Nos. H–90–829 (JAC), H–90–832 (JAC), N–90–642 (JAC), 2:91–515 (JAC) to 2:91–544 (JAC).

United States District Court,
D. Connecticut.

April 11, 1994.

& Windels, New York City, for plaintiff Matthew L. Pasternak, I/OBO similarly situated.

Paul Windels, Jr., Windels, Marx, Davies & Ives, Robert J. Perry, Perry & Windels, New York City, for plaintiffs Nicholas R. Salerno, Karen Komar, Raymond C. Hansen, Jean Neal.

Robert J. Perry, Paul Windels, III, Stephanie W. Fields, Perry & Windels, New York City, John R. Gorman, Law Offices of John R. Gorman, New Haven, CT, for plaintiff Kevin Crow.

David L. Belt, Susan H. Bartholomew, Jacobs, Grudberg, Belt & Dow, P.C., Thomas W. Ude, Jr., Winnick, Skolnick, Ruben & Block, New Haven, CT, for plaintiffs People's Bank Employee Retirement Plan, People's Bank.

Julie L. Barnes, John W. Mahoney, Jeffrey L. Williams, Gregory W. Nye, Hebb & Gitlin, P.C., Hartford, CT, Patricia A. King, Law Offices of John R. Gorman, New Haven, CT, for plaintiff A.I. Credit Corp.

Paul Windels, III, Perry & Windels, New York City, John R. Gorman, Law Offices of John R. Gorman, New Haven, CT, for plaintiffs Leonard D. Sells, D.O., Mary E. Woods, Jerry L. Cline and intervenors-plaintiffs Certain Purchasers of Ltd. Partnerships, Girvice Archer, Jr., Philip F. Busker, Joseph P. Canny, Rickie Canny, John Caval, Arthur Director, Gerald Director, Renzo Falcinelli, Salvatore V. Faulise, John Garger, Robert J. Hyland, Ernest Katz, Jr., Achim Knust, Harry Leiser, Barre Littell, Joan Lubin, Arthur Meyer, Lucio Noto, T.F. O'Hare, Vincent Paneccasio, Jr., Barbara Pollack, Glen Pallack, Daniel M. Ross, Francis A. Schneiders, Doris Schwartz, Anthony P. Sterling, Dr., Martin W. Strouch, M.D., Tony Verdream, Jeffrey Winograd, M.D., Herman Wolf, Ross Belanger, John N. Bohannon, Walter A. Borden, Henry Borkowski, Peter Bull, Peter Cushnie, Edward T. Dodd, Estate of Elizabeth H., Rose Granow, Charles B. Grosvenor, John V. Haxo, Paul B. Iannini, Uwe Koepke, Paul A. Kraus, Ian R. Lawson, Leonard Lombardi, Barbara K. Luchs, Kathleen Mauks, Richard McKenna, William H. Oler, Peter Soby, Marilyn Soby, Eugene Torvend, H. John Weisman, Oak Harbor, 27 Investors

David L. Fineberg, Moller, Horton & Rice, Hartford, CT, Paul Windels, Jr., Windels, Marx, Davies & Ives, Robert J. Perry, Perry

Known as Oak Harbor, List found on Exhibit A of Document # 77 of 2:91CV537 (JAC) and Document # 95 in 2:91CV538 (JAC) and 84 Century, 28 Investors Known as 84 Century found in Exhibit A of Document # 77 of 2:91CV537 (JAC) and Document # 95 of 2:91CV538 (JAC).

Paul Windels, III, New York City, John R. Gorman, Law Offices of John R. Gorman, New Haven, CT, Leigh R. Lasky, Beigel, Schy, Lasky, Cohen, Rifking & Hennessey, Chicago, IL, for intervenors-plaintiffs Robert Huke, Paul Roman, Mike Adler, Gary L. Grilli, William Briggs, Jerome Bobruff, Carol J. Elnicki, Harold Labonda, Joseph W. Sullivan, Phillip Antupit.

L. Douglas Chrader, Zeldes, Needle & Cooper, Bridgeport, CT, for defendant Kevin Sisti.

Kevin Sisti, defendant pro se.

Haiman Long Clein, Clein & Frasure, P.C., Old Saybrook, CT, for defendant Kenneth Zak.

John F. Conway, Shaun S. Sullivan, Edward Wood Dunham, William H. Prout, Jr., Robert Tilewick, Thomas A. Kakoska, Phyllis M. Pari, Thomas L. Casagrande, Wiggin & Dana, New Haven, CT, for defendant Arthur Andersen & Co.

Stoddard D. Platt, Graubard, Mollen Horowitz, Pomeranz & Shapiro, New York City, for defendant Colonial Realty Co.

Christina M. Storm, Byrne & Storm, P.C., Hartford, CT, for defendant Frank Schuch.

Janet C. Hall, Robert A. Izard, Jr., Leny K. Wallen–Friedman, Craig A. Raabe, Robinson & Cole, Allan B. Taylor, James H. Tancredi, Philip Smith Wellman, Day, Berry & Howard, Hartford, CT, for defendant Billings Management Co.

Allan B. Taylor, Sharon S. Tisher, James J. Tancredi, Barbara A. Petitjean, Bryan K. Pollard, Philip Smith Wellman, Day, Berry & Howard, Hartford, CT, for defendant Advest Group, Inc.

Michael Sidney Kulick, August & Kulick, Avon, CT, for defendants Malcolm Graff, Sidney Sisk.

Kerry Marc Wisser, Weinstein & Wisser, P.C., West Hartford, CT, for defendants Kenneth Schwartz, Leonard Ginsberg.

Erin Marie Kallaugher, John W. Lemega, Mark B. Seiger, Halloran & Sage, Hartford, CT, for defendants Robert A. Simons, Gerald M. Steinberg.

Richard J. Rubin, Otterbourg, Steindler, Houston & Rosen, New York City, for defendant Dwelling Development Corp.

William J. Kupinse, Jr., Goldstein & Peck, P.C., Bridgeport, CT, Maureen P. Williams, West Haven, CT, for defendant SMS & G Yankee Corp., Milton S. Shapiro, David A. Mortman, Harvey Schwartz, Marvin L. Schwartz, Harvey M. Greene.

Christopher F. Droney, U.S. Atty's Office, New Haven, CT, for defendants Jerry Brophy, Richard Ermler.

Edwin M. Larkin, Donovan, Leisure, Newton & Irvine, New York City, for defendant First Nationwide Sav., F.A.

Stephan L. Hilcoff, Hilcoff & Pellegrino, P.C., New Haven, CT, for defendant New Haven Sav. Bank.

Richard K. Lublin, Lublin & Weinstein, P.C., West Hartford, CT, for defendant Chrysler First Credit Corp.

Ann F. Bird, James G. Green, Jr., Pepe & Hazard, Hartford, CT, for defendant Barclays Business Credit, Inc.

David L. Gussak, F. Timothy McNamara, Hoberman & Pollack, P.C., David A. Curry, Hartford, CT, for defendant Kostin & Co.

Andrew B. Bowman, Law Offices of Andrew Bowman, Westport, CT, for defendant Pacowta, Fournier & Maunsell.

Michael Gene Clear, Margaret A. Kirby, Ryan, Ryan, Johnson, Clear & Deluca, Stamford, CT, Jean M. Kelley, Patrick T. Voke, Morrison Mahoney & Miller, Boston, MA, for defendant Schnidman, Barron & Co., P.C.

John A. Redmon, Cynthia A. Feigin, Davis, Markel & Edwards, New York City, for defendant Deloitte & Touche.

Edward J. Daly, Jr., Silvester, Daly & Delaney, Hartford, CT, for defendant Pannell, Kerr, Forester, Tarlow, Levey, Mandell & Kostin.

Robert T. Gill, Vincent Amoroso, Christopher G. Betke, Parker, Coulter, Daley & White, Boston, MA, Sergio C. Deganis, George J. DuBorg, DuBorg & Deganis, Glastonbury, CT, for defendant Sorokin & Sorokin, P.C.

John R. Mallin, Corcoran, Mallin & Aresco, P.C., Hartford, CT, Morton Apfeldorf, CB Commercial Real Estate Group, Inc., First Vice President and Sr. Counsel, Stamford, CT, for defendant Coldwell Banker–Commercial Real Estate Services.

Elliott B. Pollack, Hoberman & Pollack, P.C., Hartford, CT, for defendant Edward F. Heberger Associates, Inc.

W. Gordon Dobie, Michael J. Stepek, Thomas A. Reynolds, III, Winston & Strawn, Chicago, IL, Donna Nelson Heller, Harold Bolton Finn, III, Finn, Dixon .& Herling, Stamford, CT, for defendant American Appraisal Associates, Inc.

Joshua Alan Winnick, Winnick & Chambers, P.C., New Haven, CT, Alan H. Fein, Joy Spillis Lundeen, Vicki Lynn Monroe, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, Miami, FL, for defendant Dixon & Friedman, Inc.

J. Michael Sulzbach, New Haven, CT, Robert Layton, S.K. Gale, Frederick E. Sherman, Elaine H. Mandelbaum, Jones, Day, Reavis & Pogue, New York City, for defendant Cushman & Wakefield.

Brian P. Daniels, Brenner, Saltzman, Wallman & Goldman, New Haven, CT, for defendant Joseph J. Blake & Associates.

Lawrence H. Lissitzyn, Reid & Riege, P.C., Hartford, CT, for defendants, Colonial Portsmouth Ltd. Partnership, Colonial Daytona Ltd. Partnership, Colonial Capital Center Ltd. Partnership, Colonial Southbury Ltd. Partnership, Colonial Westfarms Ltd. Partnership, Colonial Metro Ltd. Partnership, Colonial Broadwater Ltd. Partnership, Colonial Mesa Ltd. Partnership, Charter Oak Square Ltd. Partnership, Colonial Cromwell Ltd. Partnership, Colonial Metro Zero Coupon Ltd. Partnership.

Thomas J. Farrell, Cranmore, Fitzgerald & Meaney, Hartford, CT, for defendants Advest/Colonial Chatfield Ltd. Partnership, Advest/Colonial Tamarac Ltd. Partnership.

Neil W. Silberblatt, Jones, Hirsch, Connors & Bull, New York City, Peter Pericles Orphanos, Serchuk & Zelermyer, White Plains, NY, Stephen R. Steinberg, Lynn Goodman, Steven A. Coploff, Serchuk & Zelermyer, Stamford, CT, for defendant Tarlow, Levy, Mandell & Kostin, P.C.

Medina K. Tyson, Updike, Kelly & Spellacy, P.C., Hartford, CT, Mary Beth Forshaw, Mark G. Cunha, Marjorie Flannigan, Simpson, Thacher & Bartlett, New York City, Cameron C. Staples, Updike, Kelly & Spellacy, P.C., New Haven, CT, for defendant Travellers Ins. Co.

Donald McPartland, Secor, Cassidy & McPartland, P.C., Waterbury, CT, for defendant Fran Wiatr.

John Patrick Marinan, Cadden & Barry, Meriden, CT, for defendant Pat Waldron.

Douglas R. Steinmetz, Cummings & Lockwood, Stamford, CT, Harold James Pickerstein, Ronald J. Pacacha, Matthew Michael Hausman, Trager & Trager, P.C., Fairfield, CT, Thomas P. Hackett, F.D.I.C., Legal Dept.–Enfield Consol. Office, East Hartford, CT, for defendant F.D.I.C., as Receiver of CityTrust.

Richard A. Bieder, Koskoff, Koskoff & Bieder, P.C., Bridgeport, CT, R. Bartley Halloran, Alfano, Halloran & Flynn, Hartford, CT, James E. Hartley, Jr., Drubner, Hartley, O'Conner & Mengacci, Waterbury, CT, for defendants Steven Liebman, Jay M. Alexander, Robert Giuliani, Armand T. Audette, Irene V. Audette, L & L Partnership, Louis J. Bona, Leo L. Christmas, Stanley Garrell, Thomas P. Miano.

Patricia A. King, Law Offices Of John R. Gorman, New Haven, CT, for defendants David A. Richman, Timex Corp. Forfeitable Benefit Trust, Mabel Roko, Trustee, Timex Corp. Benefit Trust.

Edward R. Smoragiewicz, pro se.

Santo Mark Matarazzo, Rocky Hill, CT, for defendant Edward R. Smoragiewicz.

Jeffrey J. Mirman, Levy & Droney, P.C., Farmington, CT, for defendant Colonial Healthcare Ltd. Partnership.

Jacob Wieselman, Kleban & Wieselman,
Simsbury, CT, for movant Manfred Seeman.

## TABLE OF CONTENTS

BACKGROUND ........................................................ 78
STANDARDS IN DECIDING THE MOTIONS ................................. 79
DISCUSSION ........................................................ 80
 I. Statute of Limitations ........................................ 80
 A. Section 10(b) Claims ..................................... 80
 1. The Applicable Statute of Limitations ................. 80
 2. The Date of Commencement of the Related Actions .......... 82
 3. The One–Year/Three–Year Rule ......................... 83
 a) The One–Year Prong ............................... 83
 b) The Three–Year Prong ............................. 84
 4. The Two–Year Statute of Limitations .................. 85
 B. Section 12 Claims ....................................... 85
 1. Section 12(2) Claims ................................. 85
 2. Section 12(1) Claims ................................. 86
 C. Connecticut State Law Claims ............................ 87
 1. Connecticut Uniform Securities Act Claims ............ 87
 2. Common Law Tort Claims .............................. 90
 D. RICO Claims ............................................. 90
 II. Section 10(b) Claims ......................................... 91
 A. Liability for Financial Projections ..................... 91
 1. Effect of Cautionary Language in the PPMs ............ 92
 2. Causation ........................................... 93
 a) Transaction Causation ............................ 93
 b) Loss Causation ................................... 94
 B. Liability for Alleged Omissions Regarding Frank Shuch ........... 94
 1. Shuch's Employment History .......................... 94
 2. Shuch's Relationship to David Federman ............... 95
 C. Duty to Characterize the Investments .................... 96
 D. Rule 9(b) ............................................... 96
 1. Content of Fraudulent Representations ................ 97
 2. Scienter ............................................ 97
 3. Aiding and Abetting a Section 10(b) Violation ........ 98
 a) Scienter ......................................... 98
 b) "Substantial Assistance" ......................... 98
 III. Section 12(2) Claims ........................................ 99
 IV. Connecticut State Law Claims ................................ 99
 A. Connecticut Uniform Securities Act Claims ............... 99
 1. Section 36–498(a)(2) ................................. 99
 2. Section 36–498(b) .................................. 100
 B. Common Law Fraud Claims ................................ 101
 C. Negligent Misrepresentation Claims ..................... 101
 D. Rule 9(b) .............................................. 102
 E. Supplemental Jurisdiction .............................. 103
 V. RICO Claims ................................................. 104
 A. Standing ............................................... 104
 B. Predicate Acts ......................................... 105
 1. "Fraud in the Sale of Securities" ................... 105
 2. Rule 9(b) ........................................... 107
 a) Violation of Section 10(b) ....................... 107
 b) Violation of Section 12 .......................... 107
 c) Mail and Wire Fraud .............................. 107
 C. Participation in the Conduct of the Affairs of the Enterprise ...... 108
CONCLUSION ....................................................... 108

*RULING ON DEFENDANTS'*
*MOTIONS TO DISMISS*

JOSÉ A. CABRANES, Chief Judge:

Pending before the court are the motions to dismiss of certain defendants in the above-captioned Related Actions pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. On June 22, 1993, the court heard oral argument on these motions. On December 30, 1993, while these motions were still pending, the plaintiffs filed amended complaints in all 33 Related Actions pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

Since filing the motions to dismiss, many defendants have entered into settlement negotiations pursuant to this court's Referral Order for Purposes of Settlement Negotiations (filed Sept. 21, 1993) to the Honorable Robert C. Zampano, Senior Judge of the District Court for Connecticut.[1] The court is aware that any ruling on the motions to dismiss of these defendants (the "settling defendants") is likely to affect settlement. Accordingly, the court will refrain from ruling on the motions to dismiss of the settling defendants, except to explain or modify the court's Endorsement Ruling on Defendants' Motions to Dismiss (filed Oct. 29, 1993) ("Endorsement Ruling").[2] In all other respects, the motions of the settling defendants will be dismissed without prejudice to reinstatement in the event settlement negotiations fail. The court will rule on the motions to dismiss

of the non-settling defendants in their entirety.[3]

## BACKGROUND

During the 1980's, Colonial Realty Co. ("Colonial") and its general partners, Jonathan Googel, Benjamin Sisti, and Frank Shuch ("Colonial principals" or "Colonial parties") sold limited partnership interests in various real estate properties located primarily in the state of Connecticut. These investments were offered through Private Placement Memoranda ("PPMs"), pursuant to the exemption in the registration requirements for "privately placed" transactions contained in section 4(2) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77d(2).[4] *See, e.g.,* Complaint in *Manfred Seeman v. Citytrust,* Civil Action No. 2:91–521 (JAC) (filed June 17, 1991) ("Gold Complaint") at ¶¶ 42, 57, 135.[5] The plaintiffs in the Related Actions are limited partners, who allege that their interests in Colonial were part of an elaborate "Ponzi" or pyramid scheme designed to generate fees for the Colonial principals. *See* Gold Complaint at ¶¶ 39–41.

In September 1990, involuntary bankruptcy proceedings were commenced against the Colonial parties in the United States Bankruptcy Court for the District of Connecticut.[6] Thereafter, the plaintiffs instituted adversary proceedings against Colonial, Googel, Benjamin Sisti, and Shuch. In addition, the plain-

---

1. The settling defendants include: Billings Management Co., Cushman & Wakefield, Kostin & Co., Pacowta, Fournier & Maunsell, Sorokin & Sorokin, P.C., Tarlow, Levy & Droney, P.C., and The Travellers' Insurance Company.

2. The Endorsement Ruling was a preliminary and partial ruling on certain statutes of limitations issues raised by the pending motions to dismiss. The instant ruling is intended in part to explain the basis for the Endorsement Ruling.

3. The non-settling defendants include: American Appraisal Associates, Inc., Arthur Andersen & Co., Joseph J. Blake & Associates, Inc., Coldwell Banker Commercial Real Estate Group, Inc., Dixon & Friedman, Dwelling Development Corp., and Schnidman, Barron & Company, P.C.

4. Section 77d provides that "the provisions of section 77e of this title shall not apply to ... (2)

transactions by an issuer not involving any public offering."

5. The complaints in each of the Related Actions are virtually identical. For convenience, the court will cite to the Gold Complaint, which arises out of the sale of interests in the Colonial Gold Limited Partnership. Although the complaints have been amended, the court will cite to the pre-amended version of the complaints to the extent possible because these are the complaints to which the motions to dismiss are directed.

6. In October 1990, Googel, Benjamin Sisti and Shuch were indicted on federal felony charges. In February 1992, while the charges were pending, Shuch apparently committed suicide. In June 1993, Googel and Sisti (along with Sisti's son, Kevin Sisti), pleaded guilty to multiple charges. They are currently awaiting sentencing.

tiffs commenced actions against the financial institutions that held promissory notes executed by the plaintiffs in partial consideration for their limited partnership interests. The plaintiffs also brought actions against the accounting firms, law firms, and appraisal firms (the "professional defendants") which prepared portions of the PPMs and other documents used in connection with the Colonial securities offerings. It is certain of these professional defendants which have filed the motions to dismiss that are pending before the court and subject to this ruling.

## STANDARDS IN DECIDING THE MOTIONS

■ In deciding a motion to dismiss, the court must accept as true all factual allegations in the complaint and draw inferences from these allegations in the light most favorable to the plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). The complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The parties dispute whether the court, in deciding the motions to dismiss, may consider the PPMs which certain defendants have submitted with their motion papers. The plaintiffs argue that consideration of the PPMs would convert the motions to dismiss into motions for summary judgment. The court disagrees.

■ In deciding a motion to dismiss, the court has discretion to consider an offering document which the plaintiffs had in their possession or had knowledge of and upon which they relied in bringing suit. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991) (district court may consider stock purchase agreement, offering memorandum, and warrant, on a motion to dismiss, even though these materials were not attached to the complaint), *cert. denied*, —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *I. Meyer Pincus & As-*

*soc. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir.1991) (court may consider prospectus on a motion to dismiss, even though it was not attached to the complaint); *Ferber v. Travelers Corp.*, 802 F.Supp. 698, 702 (D.Conn.1992) (court may consider public filings and full text of documents that are integral to the plaintiffs' claims). Furthermore, to the extent that the offering document contradicts allegations in the complaint, the former controls. *Ferber*, 802 F.Supp. at 702 (citations omitted).

■ It is clear that the plaintiffs in the instant case had knowledge of the PPMs and that they relied upon the PPMs in bringing their actions. In the complaints, the plaintiffs make repeated references to the PPMs, quote from the PPMs, *see, e.g.*, Gold Complaint at ¶¶ 90, 113, and base their claims directly on representations made in the PPMs. Thus, the PPMs are integral to the complaints, and the court may consider them in deciding the motions to dismiss.

■ However, the new allegations introduced by the plaintiffs in their Memorandum of Law in Opposition to the Motions of Certain Defendants to Dismiss (filed Apr. 8, 1993) ("Plaintiffs' Memorandum in Opposition") stand on a different footing. Allegations made outside of the complaint are not properly before the court on a motion to dismiss. *Morgan Distributing Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir.1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985)); *O'Brien v. National Property Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y.1989) (same).

While the court ordinarily would not consider any of the new allegations contained in the plaintiffs' Memorandum of Law in Opposition, many of these allegations have now been asserted in the amended complaints, which were filed in all of the Related Actions on December 30, 1993. Thus, the question is to what extent the court may—or should—consider the amended complaints (and the

new allegations contained therein) in deciding the motions to dismiss. It frequently happens in the district court that a plaintiff amends its complaint while a motion to dismiss is pending. A court then has a variety of ways in which it may deal with the pending motion, from denying the motion as moot to considering the merits of the motion in light of the amended complaint. In the instant case, there is a further complication: the court entered a partial and preliminary ruling on the motions to dismiss before the amended complaints were filed. *See* Endorsement Ruling. Thus, the court must also consider what effect, if any, the amended complaints have on the Endorsement Ruling.

■ Given the extraordinary circumstances of this case and the amount of time and expense that the parties have devoted to the pending motions, the court adopts the following approach: the court will neither grant nor deny with prejudice any motion to dismiss on the basis of any new allegation or claim asserted in the amended complaints; rather, where appropriate in light of allegations in the amended complaints, the court will deny the motions to dismiss without prejudice to renewal in due course. In this way, the court may consider the new allegations while preserving the defendants' right to challenge them in a later round of motions to dismiss, if any. The court will also consider the new allegations (or claims) to the extent they render moot any aspect of the motions to dismiss or the court's Endorsement Ruling.

## DISCUSSION

### I. *Statute of Limitations* [7]

The court will first consider the challenges to the plaintiffs' various claims on statute of limitations grounds.

7. As stated previously, this section, with the exception of the discussion on claims pursuant to section 12 of the 1933 Act, applies to both settling and non-settling defendants, inasmuch as it explains or modifies the Endorsement Ruling.

8. Section 10(b) provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ...

### A. Section 10(b) Claims

Section 10(b) of the Securities Act of 1934 ("the 1934 Act") prohibits fraud "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b).[8]

### 1. The Applicable Statute of Limitations

■ There is no express statute of limitations for claims of securities fraud pursuant to section 10(b). Until recently, federal courts employed the long-standing practice of "borrowing" analogous state statutes of limitations for section 10(b) claims. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976). However, on June 19, 1991, the Supreme Court enunciated a uniform federal limitations period for all section 10(b) claims. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363–64, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). The *Lampf* Court adopted the "one-year/three-year" rule specified in section 9(e) of the 1934 Act, which provides in relevant part that:

> No action shall be maintained to enforce any liability created under this section, unless brought within *one year after the discovery* of the facts constituting the violation and within *three years after such violation.*

15 U.S.C. § 78i(e) (emphasis added). This rule, the Court noted, is not subject to the doctrine of equitable tolling because the one-year period, which begins after discovery of the facts constituting the violation, makes tolling unnecessary, and the three-year limit, which is a period of repose, is inconsistent with tolling. *Lampf*, 501 U.S. at 363–64, 111 S.Ct. at 2782.

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b).

■ When *Lampf* was decided, it raised a question as to the retroactive application of the one-year/three-year rule to actions pending on June 19, 1991. Originally, courts held that the one-year/three-year rule did apply retroactively because the *Lampf* Court itself had applied the new rule retroactively to the complaint in that case. *See James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 543, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481 (1991) (it is error for a court not to apply a rule of law retroactively when the case announcing the rule applied it retroactively); *Henley v. Slone*, 961 F.2d 23, 24–25 (2d Cir.1992); *Welch v. Cadre Capital*, 946 F.2d 185, 187 (2d Cir.1991) (applying *Lampf* retroactively). However, Congress modified the retroactive application of *Lampf* by enacting a new section 27A to the 1934 Act, which provides that:

> The limitation period for any private civil action implied under section 78j(b) of this title [§ 10(b) of the 1934 Act] that was commenced on or before June 19, 1991, shall be *the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.*

15 U.S.C. § 78aa–1(a) (emphasis added).[9] Thus, Congress ensured that the one-year/three-year rule would not apply retroactively to claims filed before *Lampf* was decided on June 19, 1991.

Under the law of this Circuit, the limitations period in place just prior to *Lampf* was also the one-year/three-year rule. *See Ceres Partners v. GEL Assocs.*, 918 F.2d 349, 364 (2d Cir.1990) (adopting as the most "appropriate" uniform federal limitations period for section 10(b) claims, the one-year/three-year scheme of sections 9(e) and 18(a) of the 1934 Act, 15 U.S.C. §§ 78i(e) and 78r(c)). In general, this limitations period did not apply retroactively to cases filed before *Ceres* was decided on November 8, 1990. *See Welch v. Cadre Capital*, 923 F.2d 989, 992–95 (2d Cir.) ("*Welch I*"), *vacated sub nom. Northwest Sav. Bank v. Welch*, 501 U.S. 1247, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991).[10]

■ Actions filed before the adoption of the *Ceres* rule were governed by the traditional "borrowing" rule. Under the "borrowing" rule, federal courts applied the state limitations period which was most closely "analogous" or "appropriate" to federal law. *See, e.g., Wilson v. Garcia*, 471 U.S. 261, 263–65, 105 S.Ct. 1938, 1940–41, 85 L.Ed.2d 254 (1985) (reversing Court of Appeals by applying more closely "analogous" state limitations period). Our Court of Appeals had held that the most "analogous" limitations period for section 10(b) claims was the two-year period for fraud actions under the Connecticut Uniform Securities Act ("CUSA"), Conn.Gen. Stat. § 36–498(f) (1987), subject to the federal doctrines of equitable tolling and fraudulent concealment. *See Welch I*, 923 F.2d at 993 (citing *Clute v. Davenport Co.*, 584 F.Supp. 1562, 1577 (D.Conn.1984), *Dandorph v. Fahnestock & Co.*, 462 F.Supp. 961, 963 n. 4 (D.Conn.1979), and *Hitchcock v. deBruyne*, 377 F.Supp. 1403 (D.Conn.1974)). The version of section 36–498(f) then in place barred claims brought more than "two years after the contract for sale or the contract for investment advisory services." Conn.Gen.Stat. § 36–498(f).

To summarize: the law of this Circuit provides three distinct periods of limitations for section 10(b) claims, depending on when an action was filed: (1) the *Lampf* one-year/three-year rule for cases filed after June 19,

---

9. Section 27A also reinstated certain actions which had been dismissed under *Lampf*, provided that the action was properly commenced prior to June 19, 1991, and had been timely filed according to the statute of limitations applicable on June 19, 1991. 15 U.S.C. § 78aa–1(a).

10. In *Welch I*, 923 F.2d at 992–95, the Court of Appeals considered whether the one-year/three-year rule was applicable retroactively. In order for the one-year/three-year rule to apply retroactively in any given case, the *Welch I* court reasoned that it must satisfy the restrictive test for retroactivity articulated in *Chevron Oil Co. v.*

*Huson*, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). Under *Chevron Oil Co. v. Huson*, a rule may not apply retroactively if it (1) overrules established precedent in a way which "was not so clearly foreshadowed that plaintiffs [are] chargeable with its 'prediction,'" *id.*, 923 F.2d at 994; (2) "conflict[s] with the purpose of the rule," *id.* at 993; and (3) "produce[s] inequitable results." *Id.* at 993. Applying these factors, the Court of Appeals in *Welch I* determined that the one-year/three-year rule should not apply retroactively to the complaint in that case. *Welch I*, 923 F.2d at 995.

1991; (2) the *Ceres* one-year/three-year rule for cases filed between November 8, 1990 and June 19, 1991;[11] and (3) the "borrowed" CUSA two-year rule for cases filed prior to November 8, 1990.

### 2. The Date of Commencement of the Related Actions

■ While this date is ordinarily self-evident, there is a question in the instant case as to whether certain actions "relate back" to other actions filed on an earlier date. The plaintiffs argue that all of their section 10(b) claims against Arthur Andersen & Co. ("Arthur Andersen") "relate back" to the original complaint in *Nicholas Salerno v. Colonial Equities Corp.,* Civil Action No. H–90–832 (TEC) filed on October 4, 1990. *See* Plaintiffs' Memorandum in Opposition at 97–100. Arthur Andersen contends that only the claims of purchasers of Capitol Center Limited Partnerships were tolled by the filing of the original *Salerno* action, because Nicholas Salerno lacked standing to bring claims on behalf of investors in any other limited partnerships. *See* Arthur Andersen's Memorandum in Support of its Motion to Dismiss (filed Mar. 10, 1993) ("Arthur Andersen's Memorandum in Support") at 21–24. The court agrees.

■ In general, the filing of a class action complaint tolls the statute of limitations for all class members. *See American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 553, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). However, if the original plaintiffs lacked standing to bring their claims in the first place, the filing of a class action complaint does not toll the statute of limitations for other members of the purported class. *See Korwek v. Hunt,* 827 F.2d 874, 879 (2d Cir.1987); *In re Elscint, Ltd. Sec. Litig.,* 674 F.Supp. 374, 382 (D.Mass.1987). Thus, the critical inquiry for determining whether the plaintiffs' section 10(b) claims against Arthur Andersen were tolled by the filing of the *Salerno* complaint is whether Nicholas Salerno had standing to assert his claims.

■ The plaintiffs concede that Salerno invested in only one limited partnership, Co-

lonial Capitol Center. *See* Plaintiffs' Memorandum in Opposition at 98. Under the "purchaser/seller" requirement enunciated in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), Salerno only had standing to assert a section 10(b) claim with respect to Colonial Capitol Center. Accordingly, the filing of his complaint on October 4, 1990 tolled the section 10(b) statute of limitations only for purchasers of Capitol Center and not for any other plaintiffs.

■ Similarly, the filing of the "omnibus" complaint on February 14, 1991, tolled the statute of limitations only for purchasers of the limited partnerships in which the class representatives had invested. The class representatives in that complaint were Matthew Pasternak, Nicholas Salerno, Karen Komar, Raymond Hansen and Jean Neal. *See* Omnibus Complaint (filed Feb. 14, 1991) at ¶ 142. As this court has previously determined, Matthew Pasternak did not invest in any Colonial security. *See* Ruling on Motions to Intervene and Motions to Withdraw Motions for Class Certification (filed Aug. 22, 1992) ("Intervention Ruling") at 16–17. Consequently, Pasternak lacked standing to bring his own section 10(b) claims, and did not toll the statute of limitations for any other limited partners. *Id.* at 18. As noted above, Nicholas Salerno only invested in Colonial Capitol Center and tolled the statute of limitations for all Colonial Capitol Center purchasers as of October 4, 1990, which was prior to the filing of the "omnibus" complaint. Karen Komar and Raymond Hansen only allege that they invested in Colonial Portsmouth. *See* Complaint in *Karen Komar v. TIG–RFA, Inc.,* Civil Action No. N–90–642 (WWE) (filed Nov. 21, 1990) at ¶ 21. Since they filed their original complaint on November 21, 1990, they tolled the statute of limitations for all Colonial Portsmouth investors as of that date, which was prior to the filing of the "omnibus" complaint. Jean Neal only alleges that she invested in Colonial Metro Zero Coupon Mortgage Trust. *See* Complaint in *Jean Neal v. Arthur Andersen & Co.,* Civil Action No. 2:91–517 (JAC) (filed June 17, 1991) at ¶ 3. Accordingly, she tolled the statute of limitations for all Colonial Met-

---

**11.** Subject to the limited retroactivity principles articulated in *Welch I,* 923 F.2d at 992–95.

ro Zero Coupon Mortgage Trust purchasers with the filing of the "omnibus" complaint on February 14, 1991.

To summarize: the statute of limitations for the section 10(b) claims against Arthur Andersen were tolled as follows:

a. October 4, 1990 — Nicholas Salerno v. Schwartz (Colonial Capitol Center), Civil Action No. H–90–832 (JAC) (filed Oct. 4, 1990).[12]

b. November 21, 1990 — Karen Komar v. Citytrust (Colonial Portsmouth), Civil Action No. N–90–642 (JAC) (filed Nov. 21, 1990).

c. February 14, 1991 — Jean Neal v. Arthur Andersen & Co. (Colonial Metro Zero Coupon Mortgage Trust), Civil Action No. 2:91–517(JAC) (filed June 17, 1991).[13]

d. June 17, 1991 — All other section 10(b) claims asserted in Related Actions filed on June 17, 1991.

· As previously discussed, our Circuit provides three different statutes of limitations for section 10(b) claims, depending on when an action was filed or tolled, as may be the case. With the exception of *Salerno*, all of the Related Actions were commenced after the decision of the Court of Appeals in *Ceres* on November 8, 1990, and prior to the Supreme Court's decision in *Lampf* on June 19, 1991. Consequently, the *Ceres* one-year/three-year rule applies to these actions.[14] The two-year "borrowed" statute of limitations applies to the claims against Arthur Andersen in *Salerno* because that action was commenced before the *Ceres* decision.[15]

3. The One–Year/Three–Year Rule

■■■ Under the one-year/three-year rule, a section 10(b) claim must be brought "within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(e).

a) The One–Year Prong

■■■ Our Court of Appeals has held that " 'discovery' under the 1934 Act limitation provisions includes constructive or inquiry notice, as well as actual notice." *Menowitz v. Brown*, 991 F.2d 36, 41 (2d Cir.1993) (citations omitted). In other words, "[d]iscovery takes place when the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1042 (2d Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992). A plaintiff is put on constructive or inquiry notice when he receives "sufficient storm warnings to alert a reasonable person" to the likelihood of fraud. *Cook v. Avien, Inc.*, 573 F.2d 685, 697 (1st Cir.1978); *Morin v. Trupin*, 809 F.Supp. 1081, 1097 (S.D.N.Y. 1993) (same); *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir.1983) (a plaintiff is put on

12. With respect to Tarlow, Levy & Droney, P.C. ("Tarlow Levy"), the statute of limitations was not tolled until Tarlow Levy received notice of the action. *See Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986). Because Tarlow Levy was not named as a defendant until February 14, 1991, the statute of limitations was not tolled as to it until that date.

13. The statute of limitations was also tolled as of this date with respect to Sorokin & Sorokin, P.C. ("Sorokin") and Tarlow Levy.

14. Of course, the fact that the *Ceres* rule, rather than the *Lampf* rule, nominally applies to these claims has no practical effect on the limitation period because the one-year/three-year rule applies under both decisions.

15. The *Ceres* rule applies to the section 10(b) claims against Tarlow Levy in *Salerno* since Tarlow Levy was not named as a defendant in that action until February 14, 1991.

inquiry notice "where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded.") (quoting *Higgins v. Crouse*, 147 N.Y. 411, 416, 42 N.E. 6 (1895)).

In the instant case, the defendants argue that the plaintiffs were put on inquiry notice either (a) by the PPMs, which contained warnings about the riskiness of the investment,[16] as well as statements accurately describing the high fees that would be paid to the Colonial principals, or (b) by the contrast between the sober warning language in the PPMs and the rosy predictions and high-pressure sales tactics of the Colonial sales representatives. *See, e.g.*, Arthur Andersen's Memorandum in Support at 19–21.

■ The court rejects the defendants' argument that PPMs put the plaintiffs on inquiry notice of the likelihood of fraud. While the cautionary language contained in the PPMs may have suggested that the investment was risky, it did not warn the plaintiffs of the possibility that the whole scheme was fraudulent. Furthermore, it cannot be said that the disclosure of the fees paid to the Colonial principals signalled the underlying fraud. Despite accurate disclosure of the fee amounts, the plaintiffs have alleged that the fraudulent nature of those fees was effectively concealed by the excessively optimistic financial projections contained in the PPMs. *See* Gold Complaint at ¶¶ 119, 120. Taking these allegations as true, the court cannot conclude that the PPMs contained sufficient

"storm warnings" to put the plaintiffs on notice of fraud.

■ Furthermore, the court cannot determine based on the record to date whether the contrast between the cautionary language and the oral sales presentations put the plaintiffs on notice. The pleadings simply do not contain sufficient detail concerning the content of the oral sales presentations. Accordingly, none of the plaintiffs' section 10(b) may be dismissed at this stage of the case under the one-year prong of the *Ceres* rule. *See Vassilatos v. Ceram Tech Int'l*, 1993 WL 177780, at *4–5, 1993 U.S.Dist. LEXIS 6620, at *14 (S.D.N.Y. May 19, 1993) (after discovery, parties and court will be in a better position to ascertain the point at which plaintiffs discovered the fraud).

### b) The Three–Year Prong

■ Unlike the one-year prong of the *Ceres* (and *Lampf*) rule, the three-year prong is an absolute period of repose. 15 U.S.C. § 78i(e); *Lampf*, 501 U.S. at 363–64, 111 S.Ct. at 2782. A section 10(b) claim must be brought within three years of the date of the alleged fraud, which in the instant case, is the date of "purchase" of the Colonial securities. *See* Gold Complaint at ¶ 177. A "purchase" is deemed to occur "when the parties to the transaction are committed to one another." *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir.1972). *See also Kahn v. Kohlberg, Kravis, Roberts*

---

**16.** Arthur Andersen points to the following language:

> In our opinion, the accompanying forecast is presented in conformity with guidelines for presentation of a forecast established by the American Institute of Certified Public Accountants, and the underlying assumptions provide a reasonable basis for management's forecast. *However, there will usually be differences between the forecasted and actual results because events and circumstances frequently do not occur as expected, and those differences may be material.*
> *We have no responsibility to update this report for events and circumstances occurring after the date of this report.* (Emphasis added.)

Arthur Andersen's Memorandum in Support at 7–8 (quoting Opinion Letter to the General Partners contained in the PPM for the Colonial Cheshire I Limited Partnership). Further, Arthur Andersen highlights the following:

> The accompanying financial forecast is based on assumptions *represented by the General Partners* of the Colonial Cheshire I Limited Partnership of the income, expenses, cash flow and income tax benefits of the Partnership's properties.... The assumptions upon which the forecast is based *reflect the conditions that the General Partners expect to exist and the courses of action they expect to take.* Some assumptions may not materialize, and unanticipated events and circumstances may occur subsequent to the date of the projection. Accordingly, *the actual results achieved during this forecast period may vary from the projection and the variation may be substantial.* (Emphasis added.)

Arthur Andersen's Memorandum in Support at 8 (quoting Notes and Assumptions contained in the appendix of the PPM for the Colonial Cheshire I Limited Partnership).

& Co., 970 F.2d at 1040; *Grondahl v. Merritt & Harris, Inc.,* 964 F.2d 1290, 1294 (2d Cir. 1992). The date at which the parties are formally "committed" to a transaction is generally determined by the express terms of their agreement. *Kahn,* 970 F.2d at 1040.

 To avoid the difficulty of determining the "purchase" or "commitment" date for each individual investor, Arthur Andersen has proposed that the court use, for purposes of these motions, the "closing date" indicated in the PPMs—that is, the date after which no further interests in a limited partnership would be sold. *See* Arthur Andersen's Memorandum in Support at 16. The plaintiffs object to this approach, asserting that the proper date is the date that each limited partner was accepted into the partnership after closing. *See* Plaintiffs' Memorandum in Opposition at 107–08. The court is persuaded that using the closing date is appropriate and will not unduly prejudice the plaintiffs.

While certain limited partners may have purchased their interests *before* the closing date, the PPMs unequivocally state that no interests would be sold *after* the closing date. *See* Gold PPM at 3, 24. Furthermore, the complaints do not allege that any such sales occurred after the closing date. Therefore, it is reasonable to conclude that the plaintiffs were formally "committed" to the limited partnerships investments by no later than the closing date. The court notes that this approach, far from disfavoring the plaintiffs, actually benefits them.

Thus, the "closing date" indicated in the PPMs is deemed to be the date of "purchase" for purposes of these motions.[17] For the actions in which a PPM has not been submitted to the court, the court will use the outside date alleged in the complaints on which

limited partnership interests were offered to the plaintiffs. *See Halbrecht v. Prudential–Bache Properties, Inc.,* 1992 WL 336757, at *3–4, 1991 U.S.Dist. LEXIS 20142, at *12 (D.Conn. July, 25, 1991) (using the outside date alleged in the complaint by which all the plaintiffs were to have purchased their interests). Accordingly, the section 10(b) claims which were not filed within three years of the closing date indicated in the PPMs or outside offering date alleged in the complaints must be dismissed.

#### 4. The Two–Year Statute of Limitations

 The two-year statute of limitations for fraud actions under CUSA bars claims brought more than "two years after the contract for sale or the contract for investment advisory services." Conn.Gen.Stat. § 36–498(f).[18] As previously discussed, this limitations period applies to the section 10(b) claims against Arthur Andersen in *Salerno.* The date of the "contract for sale" is deemed to be the closing date contained in the PPM, for the reasons stated above. The PPM for Colonial Capitol Center indicates a closing date of June 1, 1989, at the latest, for the offering. *See* Colonial Capitol Center PPM at 39. Because this action was commenced on October 4, 1990—within two years of the June 1, 1989 closing date—the section 10(b) claims in this action against Arthur Andersen are not time-barred.

### B. Section 12 Claims [19]

#### 1. Section 12(2) Claims

 Section 12(2) of the 1933 Act imposes liability on a person who "sells" a security by means of a prospectus or oral communication containing a material misrepresentation or omission.[20] Under section 13 of the 1933

---

17. With respect to claims that are not dismissed, the defendants are free to demonstrate on a motion for summary judgment that individual plaintiffs purchased their interests before the closing date.

18. Section 36–498(f) was amended on July 1, 1993. *See* Conn.P.A. 93–169. That section now provides: "No person may [sue] bring an action under this section more than two years after the date of the contract or sale or of the contract for investment services...." Conn.P.A. 93–169.

19. Since the Endorsement Ruling did not address the timeliness of the plaintiffs' section 12 claims, the court will only consider the challenges of the non-settling defendants at this time.

20. Section 12(2) provides: "Any person who ... (2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of

Act, claims pursuant to section 12(2) of that statute must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence," and in no event "more than three years after the sale." 15 U.S.C. § 77m. As with the statute of limitations applicable to section 10(b) claims, this limitations period is subject to principles of inquiry notice, but not to the doctrine of equitable tolling. *See Insurance Consultants of Am. v. Southeastern Ins.*, 746 F.Supp. 390, 404–05 (D.N.J.1990) (inquiry notice applicable); *Clute v. Davenport Co.*, 584 F.Supp. 1562, 1577 (D.Conn.1984) (Blumenfeld, J.) (equitable tolling inapplicable).[21]

■ Because the record is insufficient to show when the plaintiffs received inquiry notice of the alleged misrepresentations and omissions, the plaintiffs' section 12(2) claims may only be dismissed on statute of limitations grounds if they were brought more than three years after the sale of the limited partnership interests. The court deems the date of "sale" to be the closing date indicated in the PPMs, for the reasons stated above. Accordingly, the section 12(2) claims against the non-settling defendants that were not filed within three years from the closing date must be dismissed.

2. Section 12(1) Claims

■ Section 12(1) of the 1933 Act imposes liability on a person who "sells" a security in violation of the registration requirements of the 1933 Act.[22] Under section 13, claims pursuant to section 12(1) of the 1933 Act must be brought "within one year of the violation upon which it is based," and in no

event "more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m. Unlike claims under section 12(2), section 12(1) claims do not begin to accrue at discovery, but at the date of the "violation," which in the instant case was the sale of the limited partnership interests. *See* Complaint in *Tina Deblois v. Colonial Realty/USA Corp.*, Civil Action No. 2:91–526 (JAC) (filed June 17, 1991) at ¶ 138.

■ There is a split of authority on the question of whether the doctrines of equitable tolling and fraudulent concealment apply to section 12(1) claims. *Compare Cook v. Avien, Inc.*, 573 F.2d 685, 691 (1st Cir.1978) (equitable tolling inapplicable to section 12(1) claims); *Gardner v. Investors Diversified Capital, Inc.*, 805 F.Supp. 874, 878 (D.Colo. 1992) (same); *Barton v. Peterson*, 733 F.Supp. 1482, 1490 (N.D.Ga.1990) (same, collecting cases) *with Jones v. Lewis*, 1988 WL 163026, at *2, 1988 U.S.Dist. LEXIS 16807, at *4–5 (D.Kan.1988) (equitable tolling applicable to section 12(1) claims); *In re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. 493, 507 (S.D.N.Y.1987) (same); *In re National Mortg. Equity Corp. Mortg. Pool*, 636 F.Supp. 1138, 1166–67 (C.D.Calif.1986) (same). In deciding which line of cases to follow, this court is mindful of the Court of Appeals' efforts to mitigate the harsh effect of the statute of limitations applicable to section 12(1) claims. *See Katz v. Amos Treat & Co.*, 411 F.2d 1046, 1055 (2d Cir.1969) (Friendly, J.) (related doctrine of equitable estoppel applies to section 12(1) claims). Accordingly, this court follows the Southern District of New York in *In re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. at 507, and finds that equitable toll-

the mails, by means of a prospectus or oral communications, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him...." 15 U.S.C. 77*l*.

21. A plaintiff asserting a claim pursuant to section 12 "must plead facts demonstrating compliance with the statute of limitations." *Andreo v. Friedlander, Gaines, Cohen, Etc.*, 1986 WL 15663, at *11 (D.Conn. Apr. 28, 1986) (Blumenfeld, J.) (citing *Wigand v. Flo–Tek, Inc.*, 609 F.2d 1028, 1033 n. 5 (2d Cir.1979) and *Eriksson v. Galvin*, 484 F.Supp. 1108, 1118 (S.D.N.Y.1980)).

22. Section 12(1) provides: "Any person who—
(1) offers or sells a security in violation of section 77e of this title ...
shall be liable to the person purchasing such security from him...." 15 U.S.C. 77*l*.

ing and fraudulent concealment may apply to section 12(1) claims.

█ Although the plaintiffs in the instant case have asserted generalized allegations of fraudulent concealment, *see* Gold Complaint at ¶¶ 150–153, these allegations fail to satisfy the pleading requirements of Rule 9(b). *See Armstrong v. McAlpin,* 699 F.2d at 88 (allegations of fraudulent concealment, like allegations of fraud, must satisfy the pleading requirements of Rule 9(b)); *Halbrecht v. Prudential–Bache Properties, Inc.,* 1992 WL 336757, at *5, 1991 U.S.Dist. LEXIS 20142, at *16 (same). With regard to fraudulent concealment, the plaintiffs allege the following:

> 150. Plaintiffs discovered that the fees taken by the Colonial Parties and their affiliated entities in connection with [the limited partnership] were excessive, that the net worth of the [limited partnership] Guarantors were overstated, that the Projections were unrealistic and that the offering of limited partnership interests [ ] was not exempt from registration only during the summer of 1990, after creditors commenced involuntary bankruptcy proceedings against [the Colonial parties], after the initial results of an investigation by the Federal Bureau of Investigation became public and after the press began publishing information about the limited partnership offerings of Colonial Realty.
>
> 151. Plaintiffs were diligent in pursuing the Claims, but through no fault of their own, learned of the factual basis for the Claims during the summer of 1990.
>
> 152. The Colonial Parties concealed the factual basis for the Claims. In particular, Frank Shuch and employees of Colonial Realty and of their affiliated entities falsified documents to perpetrate the scheme of defendants. Other defendants recklessly disregarded the practices of Shuch and the other Colonial employees, and thus permitted the scheme to remain concealed.

Gold Complaint at ¶¶ 150–152.

During the previous round of motions to dismiss, the court evaluated the sufficiency of

these allegations, concluding that they did not satisfy Rule 9(b) because they did not specify: (1) anyone other than Frank Shuch who allegedly engaged in concealment; (2) which documents relating to each specific action were falsified; (3) how the allegedly falsified documents concealed the specific claims made; and (4) who the "other defendants" were that participated in the concealment. Ruling on Motions to Dismiss (filed Nov. 18, 1991) at 17–18. Today, the court adheres to these findings.

Ordinarily, such a conclusion would result in the dismissal of all section 12(1) claims filed more than one year after the "violation," without prejudice to the filing of an amended complaint to adequately allege fraudulent concealment. *See Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.").[23] However, the plaintiffs have already filed amended complaints which contain new allegations of fraudulent concealment. As previously discussed in the section entitled "Standards in Deciding the Motions," the court will not evaluate the sufficiency of these allegations in order to give the defendants an opportunity to challenge them later. Nor will the court grant the defendants' motions to dismiss based on the shortcomings of the original complaints. Rather, the court will steer a middle course, denying the defendants' motions to dismiss the plaintiffs' section 12(1) claims without prejudice to renewal in due course.

### C. Connecticut State Law Claims

### 1. Connecticut Uniform Securities Act Claims

On July 1, 1993, the statute of limitations applicable to claims pursuant to CUSA, Conn.Gen.Stat. § 36–470 *et seq.,* was amended. *See* Conn.P.A. 93–169, § 1 (July 1, 1993) (amending Conn.Gen.Stat. § 36–498). As amended, section 36–498(f) provides in relevant part that:

> No person may [sue] bring an action under this section *more than two years after the date of the contract of sale* or of the con-

---

**23.** Indeed, this would have been the probable result if the court had addressed the timeliness of the plaintiffs' section 12(1) claims in the Endorsement Ruling.

tract for investment advisory services, *except that* (1) with respect to actions arising out of intentional *misrepresentation or fraud in the purchase or sale of any interest in any limited partnership* not required to be registered under the Securities Act of 1933, no person may bring an action more than *one year from the date when the misrepresentation or fraud is discovered,* except that no such action may be brought more than *five years from the date of such misrepresentation or fraud.* . . .

*Id.* (emphasis added).

Thus, in general, CUSA claims are governed by a two-year statute of limitations, which runs from the date of the contract of sale. However, claims for misrepresentation or fraud in the purchase or sale of any privately placed limited partnership interest are subject to a one-year/five-year limitations period, similar to the one-year/three-year rule that applies to section 10(b) claims. Prior to the recent amendments, all CUSA claims were governed by the two-year limitations period. This limitations period was subject to Connecticut's tolling provision for fraudulent concealment. *See* Conn.Gen.Stat. § 52–595;[24] *Clute v. Davenport,* 584 F.Supp. at 1579 (section 52–595 applicable to CUSA claims).

In the instant case, there is a question of whether the new one-year/five-year rule applies retroactively to the plaintiffs' CUSA claims. However, the court need not reach this question with respect to the plaintiffs' section 36–498(a)(2) claims in light of the amended complaints. In the Endorsement Ruling, the court dismissed certain of the plaintiffs' section 36–498(a)(2) claims on statute of limitations grounds, without prejudice to the filing of an amended complaint adequately pleading fraudulent concealment. The plaintiffs have since amended their complaints to assert new claims under the amended version of section 36–498(a)(2), which provides:

[W]ith respect to an action pending on the effective date of this act that asserts facts upon which a claim could be asserted under this section on and after the effective date of this act and which claim is asserted prior to January 1, 1994, no such action may be brought for intentional misrepresentation or fraud that occurred more than five years prior to the filing of the complaint in such action.

Conn.P.A. 93–169, § 1.

■ Because the new section 36–498(a)(2) claims effectively supplant any prior section 36–498(a)(2) claims, the court's Endorsement Ruling must be vacated as moot insofar as it applies to those prior section 36–498(a)(2) claims. As to the new section 36–498(a)(2) claims, the court must look to the statute of limitations applicable to CUSA claims asserted in actions pending prior to January 1, 1994. Such claims are subject to a five-year period of repose, which runs from the date of the misrepresentation or fraud and is tolled by the filing of the complaint. For the reasons stated above, the court deems the date of the misrepresentation or fraud to be the closing date—so that only those section 36–498(a)(2) claims asserted in actions filed more than five years from the closing date must be dismissed as barred by the statute of limitations.

■ With respect to the plaintiffs' CUSA claims pursuant to sections 36–498(a)(1) and 36–485, the court cannot avoid the retroactivity question.[25] Under Connecticut law, there is a presumption in favor of the retroactive application of "procedural" statutes, such as statutes of limitations. *Miller v. Kirshner,* 225 Conn. 185, 203, 621 A.2d 1326 (1993) (quoting *Moore v. McNamara,* 201 Conn. 16, 22, 513 A.2d 660 (1986)).[26] However, proce-

---

**24.** Section 52–595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

**25.** With respect to the plaintiffs' section 36–498(b) claims, the court need not reach the retroactivity question or any other statute of limitations question because these claims must be dismissed with prejudice on the merits. *See infra* at 100–101.

**26.** There is the opposite presumption for "substantive" statutes. *Miller v. Kirshner,* 225 Conn.

dural statutes do not apply retroactively if "considerations of good sense and justice dictate otherwise." *Id.* at 204, 621 A.2d 1326 (citing *Moore,* 201 Conn. at 22–25, 513 A.2d 660, and *Jones Destruction, Inc. v. Upjohn,* 161 Conn. 191, 195–96, 286 A.2d 308 (1971)).

▮ The court finds that "considerations of good sense and justice" do indeed dictate otherwise with respect to the retroactive application of the new Connecticut one-year/five-year rule in the instant case. First, general principles of statutory construction suggest that the Connecticut state legislature did not intend the new limitations period to apply retroactively. The legislature explicitly stated that "[t]his act shall take effect from its passage." Conn.P.A. 93–169, § 2. Moreover, the legislature expressly provided for the retroactive application of the new limitations period to pending actions in certain circumstances. *See* Conn.P.A. 93–169, § 1. Thus, when the legislature intended to refer to pending actions, it had no difficulty in doing so explicitly.

Second, considerations of fairness counsel against applying the one-year/five-year rule retroactively in the instant case. Under the old rule, the plaintiffs had two years from the discovery of the fraud in which to file their actions; under the new rule, the plaintiffs had only one year from the discovery of the fraud. If the new rule were applied retroactively, the plaintiffs would face a shorter limitations period than they anticipated when they originally filed their actions—a situation which portends significant hardship.

In *Welch I,* 923 F.2d at 995, the Court of Appeals confronted this precise situation in the context of section 10(b). The *Welch I* court refused to apply the one-year/three-year *Ceres* rule retroactively in place of the old two-year Connecticut statute of limitations in that case, reasoning that the new rule could not alter the past conduct of the plaintiffs, and would only serve to deprive them of their "right to a day in court." *Id.; see also Henley v. Slone,* 961 F.2d at 26 (in cases filed before *Ceres,* one-year/three-year rule should be "applied sparingly in light of

the retroactivity principles enunciated in *Welch I* "). Although *Welch I* was subsequently reversed in light of *Lampf* and *James B. Beam Distilling Co., see Welch v. Cadre Capital,* 946 F.2d 185 (2d Cir.1991) ("*Welch II* "), Congress implicitly revitalized it by enacting section 27A of the 1934 to modify the retroactive effect of the *Lampf* decision. *See* 15 U.S.C. § 78aa–1(a).

In light of the federal authority against the retroactive application of less generous statutes of limitations in securities fraud cases and in the absence of any Connecticut authority to the contrary, the court declines to apply the amended version of section 36–498(f) retroactively. Accordingly, the court will apply the two year statute of limitations in effect on the date the actions in the instant case were filed, subject to the doctrine of fraudulent concealment contained in section 52–595.

In *Halbrecht v. Prudential–Bache Properties Inc.,* 1992 WL 336757, at *4, 1991 U.S.District LEXIS 20142, at *14–15, this court specified the pleading requirements for fraudulent concealment under section 52–595:

> Under Conn.Gen.Stat. § 52–595, plaintiffs seeking to toll the statute of limitations on the basis of fraudulent concealment must show that the defendants' "conduct or representations were directed to the very point of inducing delay in the bringing of the lawsuit to a time which the defendants thereafter claim [ ] bars the action as not brought within the statute of limitations." *Danmar Associates v. Porter,* 43 Bankr. 423, 429 (D.Conn.1984). *This is a more exacting standard than the federal equitable tolling doctrine. Id.* Plaintiffs must allege concealment by defendants of plaintiffs' cause of action with the "fraudulent intent of inducing a delay in suing until the limitations period had expired." *Id.* Further, plaintiffs must have been ignorant of the existence of their right of action, and defendants must have intended, through their conduct, that plaintiffs be kept in

185, 203, 621 A.2d 1326 (1993). Substantive statutes should not apply retroactively unless the legislature has clearly expressed an intention to the contrary. *Id.*

ignorance. *Id.* Absent a fiduciary relationship, defendants must have been guilty of an affirmative act of concealment, of more than mere silence. *Id.*

*Halbrecht,* 1992 WL 336757, at *4, 1991 U.S.Dist. LEXIS 20142 at *15 (emphasis added).

Inasmuch as the plaintiffs in the instant case have failed to adequately allege fraudulent concealment under the federal pleading standards, they have also failed to allege fraudulent concealment under the more stringent pleading requirements of section 52–595. Furthermore, the court will not consider any new allegations of fraudulent concealment contained in the amended complaints because this portion of the ruling explains the basis for the court's Endorsement Ruling, which was entered before the amended complaints were filed. The Endorsement Ruling dismissed all section 36–498(a)(1) and 36–485 claims which were not filed within two years from date of "the contract of sale"—that is, the closing date indicated in the PPMs—without prejudice to the filing of an amended complaint to adequately allege fraudulent concealment.[27] The court adheres to this ruling today. Since the plaintiffs have already filed amended complaints to comply with the Endorsement Ruling, the defendants may now file motions to challenge the plaintiffs' new allegations of fraudulent concealment.

### 2. Common Law Tort Claims

■■ All common law tort claims, including claims for fraud, negligent misrepresentation, and breach of fiduciary duty, are subject to a three-year statute of limitations, which runs from the date of "the act or omission complained of." Conn.Gen.Stat. § 52–577.[28] In securities fraud cases, "the act or omission complained of" occurs when the investor receives documents containing

false or misleading information. *See Halbrecht v. Prudential–Bache Properties, Inc.,* 1992 WL 336757, at *4, 1991 U.S.Dist. LEXIS 20142 at *13 (citing *Miller v. Grigoli,* 712 F.Supp. 1087, 1092–93 (S.D.N.Y.1989)). However, the limitations period may be tolled by allegations of fraudulent concealment under Conn.Gen.Stat. § 52–595. *Id.*

■ Because the court has already determined that the plaintiffs have failed adequately to plead fraudulent concealment within the meaning of section 52–595, and because the court will not consider any new allegations of fraudulent concealment for the reasons stated above with respect to the plaintiffs' section 36–498(a)(1) claims, the common law fraud claims which were not filed within two years from the date when the plaintiffs received the PPMs must be dismissed. The court deems the date the plaintiffs received the PPMs to be the closing date indicated in the PPMs. Thus, in accordance with the Endorsement Ruling, the common-law fraud claims which were not filed within three years from the closing date must be dismissed without prejudice to the filing of an amended complaint to properly plead fraudulent concealment. Now that the plaintiffs have filed new complaints to reassert their CUSA claims and to replead fraudulent concealment, the defendants are free to file a new round of motions to dismiss these claims.

### D. RICO Claims

■ Claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* are governed by a four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). This limitations period runs from the date the plaintiff "discovered or should have discovered the inju-

---

**27.** Indeed, the Endorsement Ruling dismissed all CUSA claims which were barred by the two-year statute of limitations, without prejudice to the filing of an amended complaint to adequately plead fraudulent concealment. As discussed above, the court now vacates as moot the Endorsement Ruling with respect to all section 36–498(a)(2) claims.

**28.** Section 52–577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

ry." *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989); *Halbrecht v. CSH–Stamford Hotel Limited Partnership*, No. H–90–799 (JAC), slip op. at 5–6 (D.Conn. Aug. 5, 1992). Thus, principles of inquiry notice apply to RICO claims.

Because the record is insufficient to show when the plaintiffs were put on inquiry notice, the plaintiffs' RICO claims may not be dismissed on statute of limitations grounds at this stage of the case.

## II. *Section 10(b) Claims* [29]

The court next considers the motions of Arthur Andersen and certain other non-settling defendants to dismiss the plaintiffs' section 10(b) claims for failure to state a claim and for failure to plead fraud with particularity.

Section 10(b) of the 1934 Act prohibits fraud "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b).[30] To state a claim under section 10(b), the plaintiffs must allege:

> (1) damage to the plaintiff, (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud, (3) made with scienter (i.e., an intent to deceive, manipulate or defraud, or possibly with reckless disregard), (4) in connection with the purchase or sale of securities, and (5) furthered by defendant's use of the mails or any facility of a national securities exchange.

*Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1015 (2d Cir.1989) (citations omitted); *see also Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir.1992).

The plaintiff must plead each of these elements with particularity. *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982).

### A. Liability for Financial Projections

The plaintiffs allege that Arthur Andersen prepared or approved financial projections for the limited partnerships that "bore no relation to reality" and misrepresented the market for commercial real estate. Gold Complaint at ¶¶ 108, 116, 122. The projections, which were contained in the PPMs and other selling materials, included projected after-tax returns to investors upon the sale of the limited partnerships of more than 300%. *See* Gold Complaint at ¶ 102, 116. The plaintiffs allege that Arthur Andersen "knew that the Projections would make an investment in [the limited partnerships] appear economically feasible to plaintiffs notwithstanding the excessive fees charged by the general partners and made the Projections, which they knew to be excessive, for the express purpose of distracting the attention of plaintiffs from those fees." Gold Complaint at ¶ 120.

■ It is well settled that financial projections may form the basis for a claim of securities fraud. *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1092–93, 111 S.Ct. 2749, 2758–59, 115 L.Ed.2d 929 (1991); *Eisenberg v. Gagnon*, 766 F.2d 770, 775 (3d Cir.1985) (collecting cases). Financial projections are actionable under section 10(b) if (1) "the speaker 'disseminated the forecasts knowing they were false or that the method of preparation was so egregious as to render their dissemination reckless,'" *Ciresi v. Citicorp*, 782 F.Supp. 819, 822 (S.D.N.Y.1991) (quoting *Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103, 137 (S.D.N.Y.1989) and citing *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d at 117), *aff'd without opinion*, 956 F.2d

---

**29.** As previously discussed, the following sections apply only to the motions to dismiss of the non-settling defendants.

**30.** Section 10(b) provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ...

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b).

1161 (2d Cir.1992); and (2) the plaintiffs reasonably relied upon these projections in making their investment decisions. *Royal Am. Managers v. IRC Holding Corp.*, 885 F.2d at 1015.

### 1. Effect of Cautionary Language in the PPMs

Arthur Andersen argues that the language contained in the PPMs concerning the limited scope and inherent uncertainty of the projections prevented reasonable reliance on the projections as a matter of law.[31] Arthur Andersen's Memorandum in Support at 30–35. Joseph J. Blake and Associates, Inc. ("Blake"), one of the so-called "appraiser defendants," also makes this argument with respect to the cautionary language accompanying the appraisals which it prepared. Defendant Joseph J. Blake and Associates, Inc.'s Memorandum of Law in Support of its Motion to Dismiss the Fifth, Sixth, Seventh and Eleventh Claims of Plaintiffs' Complaint Dated June 17, 1991, as Said Claims Pertain to Defendant Joseph J. Blake and Associates, Inc. (filed Mar. 10, 1993) at 7–8. Under the circumstances presented, the court rejects the defendants' arguments.

 In general, reliance on projections as a forecast of the future is unreasonable as a matter of law if those projections are accompanied by language that clearly discloses their speculative nature. *See I. Meyer Pin-*

*cus & Assoc. v. Oppenheimer & Co.*, 936 F.2d at 762–63; *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986). In *Luce*, the plaintiffs alleged that they relied on representations concerning the potential cash and tax benefits of a partnership. The Court of Appeals dismissed the plaintiffs' section 10(b) claim for failure to state a claim because

> the Offering Memorandum made it quite clear that its projections of potential cash and tax benefits were 'necessarily speculative in nature' and that '[n]o assurance [could] be given that these projections [would] be realized.' Indeed, the Offering Memorandum warned prospective investors that '[a]ctual results may vary from the predictions and these variations may be material.' We are not inclined to impose liability on the basis of statements that clearly 'bespeak caution.' *Polin v. Conductron Corp.*, 552 F.2d 797, 806 n. 28 (8th Cir.), *cert. denied*, 434 U.S. 857 [98 S.Ct. 178, 54 L.Ed.2d 129] (1977) (quoted approvingly in *Goldman v. Belden*, 754 F.2d 1059, 1068 (2d Cir.1985)).

*Luce*, 802 F.2d at 56.[32]

Likewise, in *Friedman v. Arizona World Nurseries Ltd.*, 730 F.Supp. 521, 541 (S.D.N.Y.1990), the plaintiffs allegedly relied on representations of future expectations and performance, despite the disclosure of "Risk Factors" pertaining to the projections. Cit-

---

**31.** Arthur Andersen points to the following language:

> In our opinion, the accompanying forecast is presented in conformity with guidelines for presentation of a forecast established by the American Institute of Certified Public Accountants, and the underlying assumptions provide a reasonable basis for management's forecasts. *However, there will usually be differences between the forecasted and actual results because events and circumstances frequently do not occur as expected, and those differences may be material.*
> *We have no responsibility to update this report for events and circumstances occurring after the date of this report.* (Emphasis added.)

Arthur Andersen's Memorandum in Support at 8 (quoting Opinion Letter to the General Partners contained in the PPM for the Colonial Cheshire I Limited Partnership). Further, Arthur Andersen highlights the following:

> The accompanying financial forecast is based on assumptions *represented by the General Part-*

*ners of the Colonial Cheshire I Limited Partnership of the income, expenses, cash flow and income tax benefits of the Partnership's properties. . . .* The assumptions upon which the forecast is based *reflect the conditions that the General Partners expect to exist and the courses of action they expect to take.* Some assumptions may not materialize, and unanticipated events and circumstances may occur subsequent to the date of the projection. Accordingly, *the actual results achieved during this forecast period may vary from the projection and the variation may be substantial.* (Emphasis added.)

Arthur Andersen's Memorandum in Support at 7–8 (quoting Notes and Assumptions contained in the appendix of the PPM for the Colonial Cheshire I Limited Partnership).

**32.** However, the *Luce* court permitted the plaintiffs to amend their complaint to "allege particular facts demonstrating the knowledge of defendants at the time that such statements were false." *Luce*, 802 F.2d at 57.

ing *Luce*, the district court dismissed the plaintiffs' section 10(b) claims, reasoning that "[t]he warnings and disclaimers [in the offering materials] clearly limited the degree to which an investor could reasonably rely on these documents as a forecast of the *future*." *Friedman*, 730 F.Supp. at 541.

■ In these and other similar cases, the plaintiffs relied on the projections for precisely what was disclaimed by the defendants—the occurrence of future events. *See, e.g., Moorhead v. Merrill Lynch*, 949 F.2d 243, 245–46 (8th Cir.1991); *Ferber v. Travelers Corp.*, 802 F.Supp. at 711. Unlike the plaintiffs in *Friedman* or *Luce*, the plaintiffs in the instant case do not merely allege that they relied on the projections as a forecast of the future. Rather, the plaintiffs allege that they relied on the projections as evidence that the limited partnerships were legitimate investments and not part of a "Ponzi" scheme. *See* Gold Complaint at ¶¶ 117–119. Furthermore, the plaintiffs allege that Arthur Andersen knew that the plaintiffs would rely on the projections in this manner. *See* Gold Complaint at ¶¶ 120, 123. The plaintiffs make similar allegations with respect to the appraisals and the tax opinions based on those appraisals. *See* Complaint in *Joseph Cordo v. Colonial Realty II*, 2:91–532 (JAC) (filed June 17, 1991) ("Dwellco II Complaint") at ¶¶ 116–118.

While the cautionary language may have prevented reliance on the projections as a forecast of the future, this language did not prevent reliance on them as indicating an absence of fraud. Accordingly, the court finds that the cautionary language contained in the PPMs does not shield Arthur Andersen from liability under section 10(b). The court also finds that similar cautionary language attached to the property valuations does not shield Blake and the other non-settling appraiser defendants—American Appraisal Associates, Inc. ("American Appraisal"), Coldwell Banker Commercial Real Estate Group, Inc. ("CB"), and Dixon & Friedman—from section 10(b) liability.

## 2. Causation

Arthur Andersen next argues that it is not liable under section 10(b) because the plaintiffs have failed to properly allege that the projections caused their injury. The court disagrees.

■ To state a claim under section 10(b), a plaintiff must allege that its reliance on the defendant's statements caused its injury. *Royal Am. Managers v. IRC Holding Corp.*, 885 F.2d at 1015; *Gruber v. Prudential–Bache Securities, Inc.*, 679 F.Supp. 165, 175 (D.Conn.1987). The causation requirement is comprised of two elements: (1) transaction causation—that the defendant's misrepresentations induced the plaintiffs to invest in the transactions; and (2) loss causation—that the economic harm suffered by the plaintiffs occurred as a result of the misrepresentations. *See Citibank, N.A. v. K–H Corporation*, 968 F.2d at 1494.

Transaction and loss causation have been compared to the elements of causation required in tort law. *See Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 708 (2d Cir.) (citing Restatement (Second) of Torts, Sec. 548A (1977)), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). Transaction causation parallels the requisite "but for" element in tort law: but for the misrepresentations, the plaintiffs would not have invested. Loss causation resembles the element of proximate cause "because, similar to proximate cause . . . a plaintiff must prove that the damage suffered was a foreseeable consequence of the misrepresentation." *Citibank N.A. v. K–H Corp.*, 968 F.2d at 1495 (citing *Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 20–21 (2d Cir.1986)).

### a) Transaction Causation.

■ For purposes of section 10(b), transaction causation amounts to an analysis of materiality. *See Gruber v. Prudential–Bache Securities*, 679 F.Supp. 165, 176 (D.Conn.1987) ("As long as the misrepresentations are material, transaction causation may be presumed."). A misrepresentation is "material" when it would have misled a reasonable investor about the nature of the investment. *I. Meyer Pincus & Associates v. Oppenheimer & Co., Inc.*, 936 F.2d at 761. This is a liberal standard and "a complaint

may not properly be dismissed pursuant to Rule 12(b)(6) (or even pursuant to Rule 56) on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985).

 In the instant case, the projections clearly fall within this liberal definition of materiality. Therefore, transaction causation may be presumed.

### b) Loss Causation.

 With respect to loss causation, it is of course insufficient for a plaintiff to allege that the defendant incorrectly predicted the future, or that some unforeseen event occurred which rendered the investment worthless. *See Friedman v. Mohasco Corp.,* 929 F.2d 77, 79 (2d Cir.1991); *Schwartz v. Novo Industri, A/S,* 658 F.Supp. 795, 798 (S.D.N.Y. 1987). However, a plaintiff may allege that the defendant knew that its representations were fraudulent *at the time* it made such statements to potential investors, and that the defendant was aware that its representations would be used to induce investment. *See Manufacturers Hanover Trust v. Drysdale Sec. Corp.,* 801 F.2d 13, 21 (2d Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).

In the instant case, the plaintiffs have indeed alleged that Arthur Andersen knew that the projections were fraudulent when made, and that they would be used to induce investment in the limited partnerships. *See* Gold Complaint at ¶¶ 120, 123. Accordingly, the plaintiffs have adequately alleged loss causation. Because the plaintiffs have alleged both of the requisite elements of causation, the allegations concerning the projections may not be dismissed on this ground.

### B. Liability for Alleged Omissions Regarding Frank Shuch

The plaintiffs allege that Arthur Andersen is liable under section 10(b) for failing to disclose: (1) that Frank Shuch, a general partner of Colonial, left his prior employment with Broad Reach, Inc. under circumstances "that raised serious questions about the business ethics of Shuch," Gold Complaint at ¶ 99; and (2) that Shuch and David Federman, an Arthur Andersen partner, were brothers-in-law, Gold Complaint at ¶¶ 95–98.

### 1. Shuch's Employment History

Arthur Andersen argues that it was under no legal duty to disclose any information regarding Shuch's employment history. Even if it had such a duty, Arthur Andersen contends that the information was not material as a matter of law. The court disagrees with both arguments.

"In order for an omission to be actionable, the omitted information must have been material, and there must have been a duty to disclose it." *Levine v. NL Industries, Inc.,* 717 F.Supp. 252, 254 (S.D.N.Y.1989) (citing *Basic v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). An omission is material if there is " 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.' " *GAF Corp. v. Heyman,* 724 F.2d 727, 737 (2d Cir.1983) (quoting *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). As previously stated, this is a liberal standard and "a complaint may not properly be dismissed pursuant to Rule 12(b)(6) (or even pursuant to Rule 56) on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Goldman v. Belden,* 754 F.2d at 1067.

 The circumstances under which Shuch was discharged from his prior employment were clearly material under this liberal definition of materiality. The complaints allege that Shuch was terminated from his prior employment for professional dishonesty, and that, as a general partner of Colonial, he continued the same course of dishonest conduct. *See* Gold Complaint at ¶¶ 100–101. Since these allegations bear directly on Shuch's fitness to promote and manage the limited partnerships, it is beyond question that a reasonable investor would have consid-

ered them material. *Cf. United States v. Matthews*, 787 F.2d 38, 48 (2d Cir.1986) (recognizing that self-dealing by the directors or "dishonesty or deceit which inures to the direct, personal benefit of the directors" is material for purposes of section 14(a) of the 1934 Act).

However, materiality alone is insufficient to impose liability when there is no duty to disclose. A duty to disclose "arises from the relationship between the parties," *Dirks v. SEC*, 463 U.S. 646, 658, 103 S.Ct. 3255, 3263, 77 L.Ed.2d 911 (1983), and will exist only if there is "a fiduciary or other similar relation of trust between them." *Chiarella v. United States*, 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980). An accountant's duty to disclose is "dependent on or tied to" its role as an accountant. *IIT v. Cornfeld*, 619 F.2d 909, 925 (2d Cir. 1980) (accountant not liable as an aider and abettor for failure to disclose general "wrongs" not dependent on or tied to its role as an accountant); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 625 (7th Cir.) (Easterbrook, J.) ("Although accountants must exercise care in giving opinions on the accuracy and adequacy of firms' financial statements, they have no broader duty to search and sing."), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). Thus, accountants are not generally obliged to speak up concerning matters outside the scope of their engagement, even if they possess knowledge of ongoing fraud. *See LHLC Corp. v. Cluett, Peabody & Co., Inc.*, 842 F.2d 928, 932–33 (7th Cir.) (citing *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496–97 (7th Cir.1986)), *cert. denied*, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 329 (1988).

In the instant case, the information regarding Shuch's background or ethical character was not "dependent on or tied to" Arthur Andersen's role as an accountant. Therefore, the complaints must allege that Arthur Andersen had some special duty, apart from its role as an accountant, to disclose the information. The original complaints contain no such allegations. The amended complaints, on the other hand, do allege that Arthur Andersen had a role in the Colonial scheme apart from its role as accountant—a role which, the plaintiffs claim, created a duty of disclosure. *See* First Amended Complaint in *Antupit v. Arthur Andersen & Co.*, Civil Action No. 2:91–521 (JAC) (filed Dec. 30, 1993) ("First Amended Gold Complaint") at ¶¶ 102–112, 128–131, 150 (allegations concerning Arthur Andersen's involvement in the selling process of the limited partnerships). While the court intimates no view on whether these allegations are sufficient to state a claim under section 10(b), they are sufficient to save the plaintiffs' claim from dismissal at this time. Accordingly, Arthur Andersen's motion to dismiss as to the allegations concerning Shuch's employment history is denied without prejudice to the filing of a renewed motion to dismiss in due course.

2. Shuch's Relationship to David Federman

Arthur Andersen argues that it was not required to disclose the fact that Shuch was the brother-in-law of David Federman, an Arthur Andersen partner, because their relationship did not impair its "independence" as a firm of certified public accountants. The court finds this argument unpersuasive.

The American Institute of Certified Public Accountants ("AICPA") provides that "[a] member in public practice shall be independent in the performance of professional services as required by standards promulgated by bodies designated by Council [the governing body of the AICPA]." AICPA Professional Standards, ET § 101.01 (1992).[33] Interpretation 101–9 defines the term "member" to include "spouses (whether or not dependent) and dependent persons (whether or not related) for all purposes of complying with rule 101...." AICPA Professional Standards, ET § 101.11. Interpretation 101–9 further provides that the term "member" "excludes nondependent close relatives," which are defined as "nondependent children,

---

33. The AICPA rules and interpretations may be found in the Defendants' Joint Appendix, Volume II at tabs 18–23.

grandchildren, stepchildren, brothers, sisters, grandparents, parents, parents-in-law and their respective spouses." *Id.* However, "[c]lose relatives do not include the brothers and sisters of the member's spouse." *Id.,* as amended Aug. 31, 1992.

Arthur Andersen argues that Interpretation 101–9 is dispositive on the question of whether Shuch impaired its independence. Because Shuch is merely the "brother of a member's spouse," Arthur Andersen contends that he could not have jeopardized its independence. Therefore, Arthur Andersen maintains, it was not required to disclose Shuch's relationship with Federman. The court disagrees.

Even assuming that the court may properly consider the AICPA rules and interpretations cited by Arthur Andersen—an issue which the parties dispute—these rules and interpretations merely create a *presumption* of independence. *See* AICPA Professional Standards § 220.04. The plaintiffs' allegations concerning the Shuch/Federman relationship are sufficient to raise a question as to Arthur Andersen's independence or lack thereof. Accordingly, Arthur Andersen's motions to dismiss as to these allegations must be denied.

C. Duty to Characterize the Investments

Arthur Andersen contends that the essence of the plaintiffs' complaint is that the defendants failed to characterize the nature of the limited partnership investments. *See* Arthur Andersen's Memorandum in Opposition at 50–51. Arthur Andersen asserts that it had no duty to comment upon the investments in this manner, and therefore, the plaintiffs' section 10(b) claims fail as a matter of law.

■ The court agrees that Arthur Andersen had no obligation to evaluate the overall reasonableness of the limited partnerships investments. *See Antonoff v. Bushell,* 1991

WL 95433, at *3–4, 1991 U.S.Dist. LEXIS 7167, at *10–11 (S.D.N.Y. May 28, 1991) (quoting *Data Probe Acquisition Corp. v. Datatab, Inc.,* 722 F.2d 1, 5 (2d Cir.1983), *cert. denied,* 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984)); *Adler v. Berg Harmon Associates,* 790 F.Supp. 1222, 1232 (S.D.N.Y. 1992). However, the plaintiffs have not only alleged that Arthur Andersen failed to warn them that the investment was a lemon; the plaintiffs have also alleged that Arthur Andersen failed to reveal, and took affirmative actions to conceal, the underlying fraud. The court finds that these allegations are sufficient to state a claim under section 10(b).

### D. Rule 9(b)

Certain non-settling defendants argue that the plaintiffs' section 10(b) claims do not meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which provides that "the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b).

■ To satisfy the requirements of Rule 9(b), a complaint must "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify the persons responsible for the statements." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989) (citing *Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d Cir.1985)). Furthermore, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."[34] *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) (citations omitted).

■ With respect to claims pursuant to section 10(b), the complaint should, at a

---

**34.** The plaintiffs argue, and the court agrees, that Dwelling Development Corp. ("DDC") is subject to a more liberal standard of particularity under Rule 9(b). Where a defendant is an "insider" or affiliate participating in the offer of securities in question, "'no specific connection between fraudulent representations in [an] Offering Memorandum and particular defendants is neces-

sary.'" *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) (quoting *Luce v. Edelstein,* 802 F.2d at 55). As a general partner, DDC was clearly an "insider" participating in the offer of limited partnerships. Under these circumstances, the plaintiffs need not allege a specific connection between the fraudulent misrepresentations and DDC.

minimum, state the time, place, speaker, and content of the alleged misrepresentations or omissions. *Id.* (citing *Luce v. Edelstein,* 802 F.2d at 54). In addition, in order to adequately plead scienter, the complaint must "allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Cosmas v. Hassett,* 886 F.2d at 12–13 (citing *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds, United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989) (en banc)).

### 1. Content of Fraudulent Representations

■ The defendants contend that the plaintiffs have failed to specify the content of the alleged misrepresentations and omissions. The court disagrees.

The plaintiffs allege that Arthur Andersen (1) misrepresented the relevant real estate market and the economic feasibility of the limited partnerships by making unrealistic financial projections, *see* Gold Complaint ¶¶ 116, 119, 120; (2) failed to disclose that Shuch had been dismissed from his prior employment at Broad Reach, Inc. for dishonesty, *see id.* at ¶¶ 99–100; and (3) failed to disclose that Shuch was the brother-in-law of Arthur Andersen partner David Federman. *See id.* at ¶¶ 95–98. As to the appraiser defendants, the plaintiffs allege that these defendants issued appraisals which misrepresented the value of certain Colonial properties. *See, e.g.,* Dwellco II Complaint at ¶¶ 115–123 (concerning Blake). There can be no doubt that the plaintiffs have adequately specified the content of the alleged misrepresentations and omissions.

### 2. Scienter

The defendants next argue that the plaintiffs have failed to plead scienter with sufficient particularity. Again, the court disagrees.

Under Rule 9(b), "a complaint alleging fraud may aver intent generally, but it must nonetheless allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent."

*Kramer v. Time Warner, Inc.,* 937 F.2d 767, 775–76 (2d Cir.1991) (citations and quotations omitted).

■ For forward looking statements, such as projections about the future performance of an investment, Rule 9(b) requires that a complaint allege particular facts demonstrating that the defendant knew or recklessly disregarded that the projections were false *at the time* that such projections were made. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d at 1248 (citing *Luce v. Edelstein,* 802 F.2d at 57). It is insufficient to allege that the defendants knew or should have known that the projections were fraudulent because they were not ultimately realized—the so-called "fraud by hindsight" theory. *See O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 677 (2d Cir.1991) (allegations that accounting firm knew that its financial projections were unattainable did not satisfy the scienter requirement of Rule 9(b)).

■ This is not a case in which the plaintiffs merely allege "fraud-by-hindsight." In the instant case, the plaintiffs have alleged that Arthur Andersen knew or should have known *at the time* the PPMs were prepared that the representations contained therein were fraudulent. In particular, the complaints allege that Arthur Andersen "knew, or in the exercise of reasonable care, should have known" that no reasonable basis existed for the financial projections, and thus, that they were made solely for the purpose of concealing the excessive fees paid to the Colonial principals. Gold Complaint at ¶ 122. Accordingly, the scienter requirement of Rule 9(b) is satisfied with respect to Arthur Andersen.

■ The scienter requirement also is satisfied with respect to the appraiser defendants. Scienter may be established either by showing "a motive for committing fraud and a clear opportunity for doing so" or by identifying "circumstances indicating conscious behavior by the defendants." *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987) (citations omitted), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). It is insufficient, however, to allege

merely that an appraiser failed to investigate the economic data on which the appraisals were based. *See O'Brien v. Price Waterhouse,* 740 F.Supp. 276, 282–83 (S.D.N.Y. 1990).

■ In the instant case, the plaintiffs allege facts indicating knowledge or reckless disregard by the appraiser defendants. For example, as to Blake, the plaintiffs allege that "at the time it conducted its appraisal ... [Blake] knew that [the Colonial Parties] intended to sell interests in the [Colonial property (the "Project")] to investors in a tax shelter transaction," Dwellco Complaint at ¶ 116, and "also knew that a high appraisal value of the Project would make interests in any tax shelter organized to own and operate the Project more attractive to investors." *Id.* at ¶ 117. Furthermore, the plaintiffs allege that "[a]t the time that it conducted its appraisal ... [Blake] knew that ... the Project would have to have a fair market value that substantially exceeded the amount of any mortgage loans secured by the Project, and that a high appraisal of the value of the Project ... would make interests in any tax shelter organized to own and operate the Project more attractive to investors for that reason as well." Dwellco II at ¶ 118. Rule 9(b) does not require the plaintiffs to become appraisers themselves and set forth in a pleading exactly how much the property valuations were overestimated. Accordingly, the allegations that the appraiser defendants knew that the appraisals were commercially unreasonable and made to induce investment satisfy the scienter requirement of Rule 9(b).

■ Finally, the plaintiffs have adequately pleaded scienter with respect to DDC. The Dwellco II Complaint is replete with allegations that DDC, as a general partner, was integrally involved in the Colonial scheme. These allegations permit a strong inference that DDC knew about—and perhaps even intended—the alleged fraud. Furthermore, the complaint's allegation that the general partners had a motive to engage in a Ponzi scheme is a common method for establishing scienter. *See* Dwellco II Complaint

at ¶ 40. Therefore, the scienter requirement of Rule 9(b) is satisfied.

### 3. Aiding and Abetting a Section 10(b) Violation

Arthur Andersen argues that the plaintiffs' aiding and abetting claims under section 10(b) are also insufficiently particular. The court disagrees.

■ To establish a claim for aiding and abetting a securities law violation, "there must be shown (1) a securities law violation by a primary party, (2) scienter on the part of the aider and abettor, and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation." *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 206–07 (2d Cir.1989) (citing *IIT v. Cornfeld,* 619 F.2d at 922); *Armstrong v. McAlpin,* 699 F.2d at 91.

#### a) Scienter

■ Even assuming *arguendo* that the plaintiffs have properly pled a primary violation of section 10(b), Arthur Andersen argues that the plaintiffs have failed adequately to allege scienter with respect to the financial projections and Shuch's employment history. For the reasons stated above, the court finds that the plaintiffs have adequately alleged scienter in connection with the financial projections. Furthermore, the plaintiffs have adequately alleged scienter with respect to the allegations concerning Arthur Andersen's failure to disclose Shuch's employment history. The plaintiffs allege that when the PPMs were prepared, Arthur Andersen *"knew or recklessly disregarded* the fact that Shuch had left his prior employment under circumstances that raised serious questions about the business ethics of Shuch," Gold Complaint at ¶ 100 (emphasis added), and that this fact was material. *Id.* at ¶ 101. These allegations are sufficient for purposes of Rule 9(b).

#### b) "Substantial Assistance"

■ Arthur Andersen also contends that the plaintiffs have failed adequately to plead "substantial assistance" by the defendants. In order to adequately plead "substantial assistance," the plaintiffs "must allege that the acts of the aider and abettor *proximately caused the harm* ... on which primary liabil-

ity is predicated." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir.1985) (citations omitted) (emphasis added). Inasmuch as the court has already determined that the plaintiffs have properly alleged proximate causation, the plaintiffs have also properly alleged "substantial assistance."

### III. *Section 12(2) Claims*

In *Jean Neal v. Arthur Andersen & Co.*, 2:91–CV–517 (JAC) (filed June 17, 1991), the plaintiffs allege that Arthur Andersen violated section 12(2) of the 1933 Act by aiding and abetting the securities fraud committed by the Colonial principals. Arthur Andersen responds that there is no aider and abettor liability under section 12(2), and therefore the plaintiffs' claim must be dismissed. Because the amended complaint appears to allege that Arthur Andersen is a "statutory seller" within the meaning of section 12(2), the plaintiff's claim survives the motion to dismiss.

Section 12(2) imposes liability on a person who "sells" a security by means of a prospectus or oral communication containing a material misrepresentation or omission.[35] 15 U.S.C. § 77l. The term "seller" was defined in *Pinter v. Dahl*, 486 U.S. 622, 647, 108 S.Ct. 2063, 2078, 100 L.Ed.2d 658 (1988), to include not only actual sellers but also "brokers and others who solicit securities purchases."[36] However, the *Pinter* Court expressly rejected a broader definition of "statutory seller," reasoning that it "might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services, to § 12(1) liability." *Id.* For this reason, there can be no aider and abettor liability under section 12. *See Royal American Managers Inc. v. IRC Holding Corp.*, 885 F.2d at 1017; *Wilson v. Saintine Exploration and Drilling Corp.*, 872 F.2d 1124, 1127 (2d Cir.1989).

In the instant case, the original complaints do not allege that Arthur Andersen was a "statutory seller," but only an aider and abettor of the asserted frauds. The amended complaints, however, do allege that Arthur Andersen offered and sold Colonial securities. Because the amended complaints contain allegations which may support a claim under section 12(2)—a proposition which Arthur Andersen remains free to contest—Arthur Andersen's motion to dismiss as to the plaintiffs' section 12(2) claims is denied, without prejudice to renewal in due course.

### IV. *Connecticut State Law Claims*

The plaintiffs have asserted pendent state law claims, including violations of CUSA, common law fraud, and negligent misrepresentation, against Arthur Andersen and certain other non-settling defendants. These defendants have moved to dismiss the plaintiffs' state law claims for failure to state a claim, failure to plead fraud with particularity, and in some instances, lack of subject matter jurisdiction.

#### A. Connecticut Uniform Securities Act Claims

##### 1. Section 36–498(a)(2)

The plaintiffs allege that Arthur Andersen violated section 36–498(a)(2) by aiding and abetting the frauds committed by the Colonial principals. Arthur Andersen argues that there is no aider and abettor liability under section 36–498(a)(2), and that the plaintiffs have otherwise failed to allege that

---

**35.** Section 12 provides: "Any person who—

(1) offers or sells a security in violation of section 77e of this title, or

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communications, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him...." 15 U.S.C. § 77l.

**36.** Although the securities claim in *Pinter* arose under section 12(1), the Second Circuit has extended its holding to section 12(2) claims. *See Wilson v. Saintine Exploration and Drilling Corp.*, 872 F.2d 1124, 1126 (2d Cir.1989).

it is a "statutory seller" as required by that section. The court disagrees with Arthur Andersen on both accounts.

Until recently, the language of section 36–498(a) was virtually identical to section 12(2) of the 1933 Act and interpreted similarly, in the absence of state authority to the contrary.[37] *See Capri v. Murphy*, 856 F.2d 473, 479 (2d Cir.1988). Thus, section 36–498(a), like section 12(2), only imposed liability on "statutory sellers." *Id.* at 478–79 (determination that the defendants were "sellers" for purposes of section 12(2) was sufficient to establish liability under section 36–498(a)). Furthermore, section 36–498(a)(2), like section 12(2), did not extend liability to aiders and abettors. *Chrysler Capital Corp. v. Century Power Corp.*, 1992 WL 163006, at *5–6, 1992 U.S.Dist. LEXIS 9187, at *15–16 (S.D.N.Y. June 24, 1992) (no aider and abettor liability under section 36–498(a)). *But see Connecticut National Bank v. Giacomi*, 1993 WL 392951, at *14–16, 1993 Conn.Super. LEXIS 2508, at *40–44 (Judicial District of Waterbury Sept. 28, 1993) (construing law in effect prior to 1993 amendments, and holding aider and abettor liability formed independent basis for liability under CUSA).

■ On July 1, 1993, section 36–498(a)(2) was amended to extend liability to any person who "offers or sells or *materially assists any person who offers or sells* a security by means of any untrue statement of a material fact or any omission to state a material fact...." Conn.P.A. 93–169. Thus, under the amended version of section 36–498(a)(2), it is clear that aider and abettor liability exists. The only question is whether this amendment applies retroactively to actions filed before July 1, 1993.

In light of the amended complaints in the instant case, the court need not reach this question. The court treats the plaintiffs' section 36–498(a)(2) claims in the amended complaints as new claims, pursuant to the amendment to section 36–498(a)(2) which provides:

[W]ith respect to an action pending on the effective date of this act that asserts facts upon which a claim could be asserted under this section on and after the effective date of this act and which claim is asserted prior to January 1, 1994, no such action may be brought for intentional misrepresentation or fraud that occurred more than five years prior to the filing of the complaint in such action.

Conn.P.A. 93–169, § 1. Since claims for aider and abettor liability could be asserted under this section on and after July 1, 1993, and since the plaintiffs reasserted their aider and abettor claims before January 1, 1994, the plaintiffs have stated a claim under CUSA.

### 2. Section 36–498(b)

■ The plaintiffs allege that Arthur Andersen also violated section 36–498(b) by aiding and abetting the frauds committed by the Colonial principals. Arthur Andersen argues that section 36–498(b) is inapplicable in the instant case because it only imposes liability on "investment advisers." The court agrees.

Section 36–498(b) imposes liability upon any person who violates section 36–473(a).[38] Section 36–473(a), in turn, imposes liability on "investment advisers,"[39] defined as "any

---

**37.** The version of section 36–498 in effect since 1987 provides that: "Any person who ... (2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him...." Conn.Gen.Stat. § 36–498 (1987).

**38.** Section 36–498(b)(1) provides in relevant part: "Any person who violates subsection (a) of section 36–473 and (2) any investment adviser who violates subsection (b) or (c) of section 36–473 ... shall be liable to the recipient of investment advisory services for any consideration paid by the recipient for those services and any loss resulting from the investment advisory services provided...."

**39.** Section 36–473 is entitled "Prohibited activities of investment advisors and persons who solicit advisory business on behalf of investment advisers." Section 36–473 provides that: "No person who directly or indirectly receives com-

person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities." Conn.Gen.Stat. § 36–471(6). Moreover, the definition of "investment adviser" in section 36–471(6) expressly excludes "a lawyer [or] accountant . . . whose performance of these services is solely incidental to the practice of his profession." Conn.Gen.Stat. § 36–471(6)(B).

Because the definition of "investment adviser" excludes accountants, and because the plaintiffs have not otherwise alleged facts that might support a claim that Arthur Andersen was, or acted as, an "investment adviser" in this case, the plaintiffs' section 39–498(b) claims must be dismissed.[40]

### B. Common Law Fraud Claims

Arthur Andersen and certain other non-settling defendants have moved to dismiss the plaintiffs' common law fraud claims under Rule 12(b)(6) and Rule 9(b). The court finds that the plaintiffs have stated a claim for common law fraud with sufficient particularity.

■ To state a claim for common law fraud under Connecticut law, a plaintiff must allege that: (1) a misrepresentation was made as to a statement of fact; (2) the statement was untrue and known by the defendant to be untrue; (3) the statement was made to induce the plaintiff to act; and (4) the plaintiff acted on the misrepresentation to her detriment. *Miller v. Appleby,* 183 Conn. 51, 54–55, 438 A.2d 811 (1981); *Dorsey v. Mancuso,* 23 Conn.App. 629, 633, 583 A.2d 646 (1990), *appeal denied,* 217 Conn. 809 (1991).

■ The pleading requirements for common law fraud are largely the same as the pleading requirements for section 10(b). *See Royal Am. Managers, Inc. v. IRC Holding Corp.,* 885 F.2d at 1015 (to state a claim under section 10(b), a plaintiff must allege (1) damage to the plaintiff, (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud, (3) made with scienter (i.e., an intent to deceive, manipulate or defraud, or possibly with reckless disregard), (4) in connection with the purchase or sale of securities, and (5) furthered by defendant's use of the mails or any facility of a national securities exchange). Inasmuch as the court has already determined that the plaintiffs' section 10(b) claims satisfy the pleading requirements of Rule 12(b)(6) and Rule 9(b), the court finds that the plaintiffs' common law fraud claims also satisfy these standards.

### C. Negligent Misrepresentation Claims

According to Arthur Andersen, the plaintiffs cannot maintain their negligent misrepresentation claims because they have failed

---

pensation or other remuneration for advising another person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports the issuance of analyses or reports or otherwise, shall: (1) Employ any device, scheme or artifice to defraud the other person; (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or (3) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon such other person." Conn.Gen.Stat. § 36–473(a) (1991). The version of section 36–473(a) in effect prior to the 1991 amendments did not include (2) above. *See* Conn.Gen.Stat. § 36–473(a) (1977).

**40.** The court queries whether the plaintiffs intended to assert claims under the version of section 36–498(b) in effect before the 1987 amendments, which imposed liability on "[e]very person who directly or indirectly controls a seller liable under subsection (a) of this section . . . every employee of such a seller who materially aids in the sale . . . and every broker-dealer or *agent who materially aids in the sale.*" Conn. Gen.Stat. § 36–498(b) (1977) (emphasis added). This provision, with some minor alterations, is now designated as section 36–498(c). The court need not reach the question of whether the plaintiffs have stated a claim under section 36–498(c) because the plaintiffs have neither asserted claims under this section nor stated in their memorandum in opposition that it was their intention to do so. *See Chrysler Capital Corp. v. Century Power Corp.,* 1992 WL 163006, at *5–6, 1992 U.S.Dist. LEXIS 9187, at *16–17 (defendant who is not alleged to fall within limited class of potential defendants under section 36–498(c) cannot be held liable under that section).

to allege either that they were in privity with Arthur Andersen, or that Arthur Andersen possessed actual knowledge that the plaintiffs would rely on the alleged misrepresentations. The court disagrees.

To state a claim for negligent misrepresentation against a professional defendant, the plaintiff must be in privity with the defendant or in a "relationship 'so close to approach that of privity.'" *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 546, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985) (quoting *Ultramares Corp. v. Touche*, 255 N.Y. 170, 182–83, 174 N.E. 441 (1931) (Cardozo, C.J.)); *Rogovan v. Coopers & Lybrand*, 1992 WL 77182, at *1–2, 1992 Conn.Super. LEXIS 921, at *3–4 (Judicial District of New London Apr. 3, 1992) (adopting the *Ultramares* rule as set forth in *Credit Alliance*); *Steiner v. Shawmut Nat. Corp.*, 766 F.Supp. 1236, 1247 (D.Conn.1991) (negligent misrepresentation under Connecticut law "require[s] privity or actual knowledge by the defendants of reliance"). Furthermore, the "non-privity cases that favor plaintiffs all involve dealings among small numbers of parties known to the defendants, and whose reliance on defendant's representations was immediate and obvious." *In re Time Warner Inc. Sec. Litig.*, 794 F.Supp. 1252, 1264 (S.D.N.Y.1992) (citing *Credit Alliance*, 493 N.Y.S.2d at 444–45, 483 N.Y.S.2d at 119–20) *aff'd in part and rev'd in part on other grounds*, 9 F.3d 259 (2d Cir.1993); *Steiner v. Shawmut Nat. Corp.*, 766 F.Supp. at 1247 (professional defendants owe no duty to unknown prospective investors). This requirement has been satisfied in the context of privately placed limited partnership interests, where a defendant, though not in privity with the plaintiff, solicited potential investors. *See Duke v. Touche Ross & Co.*, 765 F.Supp. 69, 77 (S.D.N.Y.1991) (limited partnership investors stated negligent misrepresentation claim against accounting firm that prepared PPM and other documents because PPM was distributed to select group of qualified investors, rather than the public at large, and firm allegedly solicited some investors).

In the instant case, the plaintiffs do not allege they were in actual privity with Arthur Andersen. Rather, the plaintiffs al-

lege that Arthur Andersen knew members of the class would rely on the representations contained in the PPMs in deciding whether to invest in the limited partnerships. *See, e.g.*, Gold Complaint at ¶ 123. This allegation, standing alone, is insufficient to state a claim for negligent misrepresentation. In the amended complaints, however, the plaintiffs also allege that Arthur Andersen offered to market limited partnerships to its clients, and that it provided client lists to Colonial salespersons. *See, e.g.*, First Amended Gold Complaint at ¶¶ 67, 103, 104. In addition, the amended complaints appear to contain numerous other allegations which indicate that the plaintiffs' reliance was both immediate and obvious to Arthur Andersen. While the court intimates no view on whether these allegations are sufficient to state a claim for negligent misrepresentation, they are sufficient to defeat Arthur Andersen's present motion to dismiss these claims. Accordingly, Arthur Andersen's motion to dismiss the plaintiffs' negligent misrepresentation claims must be denied. Of course, Arthur Andersen may file a renewed motion to dismiss these claims at a later date.

### D. Rule 9(b)

Although the plaintiffs' claims of fraud, negligent misrepresentation, and aiding and abetting fraud arise under Connecticut law, these claims must nevertheless satisfy the pleading requirements of Rule 9(b). *See Stern v. General Electric Co.*, 924 F.2d 472, 476 n. 6 (2d Cir.1991). Thus, with respect to common law fraud and negligent misrepresentation, the plaintiffs must allege scienter on the part of the defendants, and specify with particularity the content, time and place of the alleged misrepresentations. *See O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991). For the reasons stated above, the court finds that the plaintiffs have adequately pleaded each of these elements.

With respect to aiding and abetting common law fraud, a plaintiff must allege with particularity that: (1) the party aided by the defendant performed a wrongful act; (2) the defendant generally was aware of his role as part of an illegal or tortious

activity at the time he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation. *FDIC v. Romaniello*, 1992 WL 369557, at 1, 1992 Conn.Super. LEXIS 3318, at *3 (Judicial District of Fairfield at Bridgeport Dec. 3, 1992). The pleading requirements for aiding and abetting common law fraud are substantially similar to the pleading requirements for aiding and abetting a violation of section 10(b). *See National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 206–07 (2d Cir.1989) (to state a claim for aiding and abetting a securities law violation, plaintiff must allege: (1) securities law violation by primary party; (2) scienter on the part of aider and abettor; and (3) "substantial assistance" by aider and abettor in the achievement of primary violation). Inasmuch as the court has already determined that the plaintiffs' claims of aiding and abetting a section 10(b) violation satisfy the pleading requirements of Rule 9(b), the court finds that the plaintiffs' claims of aiding and abetting common law fraud likewise satisfy these requirements.

### E. Supplemental Jurisdiction

As a result of this ruling, only state law claims remain against certain non-settling defendants—American Appraisal, CB, and Schnidman, Barron & Company, P.C. ("Schnidman"). These defendants have moved to dismiss the state law claims against them for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). The plaintiffs request that this court exercise supplemental jurisdiction over the state law claims against these defendants pursuant to the Judicial Improvements Act, 28 U.S.C. § 1367(a),[41] asserting that the state law claims "arise out of the same fraudulent scheme" as the federal claims against other defendants. Plaintiffs' Memorandum in Opposition at 117. Even if section 1367(a) does not apply,[42] the plaintiffs urge the court to exercise jurisdiction under the doctrines of ancillary and pendent jurisdiction.

Since making these arguments, the plaintiffs have amended two of the complaints to include federal RICO claims against Schnidman. In light of these amended complaints, the court will for the time being continue to exercise supplemental jurisdiction over the state law claims against Schnidman. Accordingly, Schnidman's motion to dismiss for lack of subject matter jurisdiction is denied.[43]

As to American Appraisal and CB, the court declines supplemental jurisdiction for substantially the same reasons stated in the Ruling on Motions to Dismiss (filed Nov. 18, 1991). First, the state law claims do not derive from "the same case or controversy" as the RICO claims against the co-defendants of American Appraisal and CB. *See* 28 U.S.C. § 1367(a); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *see also* Ruling on Motions to Dismiss (filed Nov. 18, 1991) at 11–12. The operative facts underlying the RICO claims concern wide-ranging charges of securities fraud, mail fraud, and wire fraud. By contrast, the operative facts underlying the state law claims only concern the particular limited partnerships in which the above defendants were involved. Under these circumstances, it would be patently unfair to require the defendants to continue to litigate their actions in federal court.

**41.** The Judicial Improvements Act provides that: "(a) ... the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).

**42.** Section 1367 arguably does not apply to actions commenced before its effective date of December 1, 1990. *See* Ruling on Motions to Dismiss (filed Nov. 18, 1991).

**43.** This analysis raises a question concerning Kostin—one of the settling defendants—which was dismissed from this litigation in federal court pursuant to Fed.R.Civ.P. 12(b)(1) in all but one of the Related Actions. *See* Endorsement Ruling at 10–11. After the Endorsement Ruling was entered, the plaintiffs amended certain complaints to assert federal RICO claims against Kostin. Although the court is reluctant to disturb its Endorsement Ruling with respect to a settling defendant, consistency demands such a result in this instance. Accordingly, for the same reasons that Schnidman's motion is denied, the Endorsement Ruling is vacated to the extent that it dismissed state law claims against Kostin pursuant to Fed.R.Civ.Pro. 12(b)(1).

Second, even if the RICO claims and the pendent state law claims were "so related" as to warrant the exercise of supplemental jurisdiction under § 1367(a), there are compelling reasons for declining supplemental jurisdiction under § 1367(c)(4), including the sheer complexity and massiveness of this litigation.[44] In short, there is no reason to exercise supplemental jurisdiction where the effect would be to impose the burden of this litigation on defendants who are more properly before a state court. *See* Ruling on Motions to Dismiss (filed Nov. 18, 1991) at 13.

## V. *RICO Claims*

Finally, the court considers the defendants' motions to dismiss the plaintiffs' RICO claims.

To state a claim under RICO, a plaintiff must allege that the defendant committed two or more predicate acts constituting a "pattern of racketeering activity." 18 U.S.C. §§ 1961(1) and (5), 1962(c), 1964(c).[45] *Gruber v. Prudential–Bache Securities, Inc.,* 679 F.Supp. at 174. The plaintiffs allege that the defendants engaged in the predicate acts of securities fraud in violation of section 10(b) of the 1934 Act and section 12 of the 1933 Act, mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343.

### A. Standing

Arthur Andersen first challenges the plaintiffs' standing to assert their RICO claims. According to Arthur Andersen, "a limited partner does not have standing to assert RICO claims if the only injury he suffered is the diminution of the value of his investment in the limited partnership." Arthur Andersen Memorandum in Support at 53 (quoting *Attick v. Valeria Associates, L.P.,* 835 F.Supp. 103 (S.D.N.Y.1992)). Since such an injury is "derivative" of the injury suffered by the limited partnership, Arthur Andersen asserts that only the limited partnership may recover under RICO. *Id.* Contending that the plaintiffs' sole alleged economic injury is the diminution in the value of their investments, Arthur Andersen argues that the plaintiffs lack standing to bring their RICO claims. The court disagrees.

A RICO plaintiff "only has standing, if, and can only recover to the extent that, he has been injured in his business or property *by [reason of] the conduct constituting the violation.*" *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (emphasis added). In other words, the defendant's conduct must have been the proximate cause of the plaintiff's injury. *See Holmes v. Securities Investor Protection Corp.,* —— U.S. ——, ——, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992); *Standardbred Owners Ass'n v. Roosevelt Raceway,* 985 F.2d 102, 104 (2d Cir.1993); *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23–24 (2d Cir.1990). The test of proximate cause is whether the defendant's acts " 'are a substantial factor in the sequence of responsible causation,' and whether 'the injury is reasonably foreseeable or anticipated as a natural consequence.' " *Standardbred Owners Ass'n,* 985 F.2d at 104 (quoting *Hecht,* 897 F.2d at 23–24). The purpose of this rule is "to preclude recovery by plaintiffs who 'complain[ ] of harm flowing merely from the misfortunes visited upon a

---

**44.** Section 1367(c) provides that: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

**45.** For civil actions, RICO provides that: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Section 1962 provides in relevant part: "It shall be unlawful for any per-

son employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "[R]acketeering activity" is defined to include a number of state and federal offenses, including mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and "any offense involving ... fraud in the sale of securities ... punishable under any law of the United States." 18 U.S.C. § 1961(1). At least two such acts are required for a "pattern of racketeering activity." 18 U.S.C. § 1961(5).

third person.'" *Id.* (quoting *Holmes,* —— U.S. at ——, 112 S.Ct. at 1318, and citing *Rand v. Anaconda–Ericsson, Inc.,* 794 F.2d 843, 849 (2d Cir.) (corporate shareholders or creditors suing for injuries to the corporation), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986)). Thus, the proximate causation test would mandate the result suggested by Arthur Andersen in cases where the plaintiff's injury is wholly the product of another's injury.

▮ In the instant case, the plaintiffs do not seek recovery for an injury that is "derivative" of the injury, if any, suffered by the limited partnerships. The plaintiffs do not merely claim that they suffered diminution in the value of their investments; rather, they claim that the defendants' fraudulent conduct induced them to purchase their limited partnership interests, and that this result was reasonably foreseeable to the defendants. *See, e.g.,* Gold Complaint at ¶¶ 176–178. Thus, the plaintiffs have alleged that they were injured directly by the defendants' conduct. These allegations clearly satisfy the test for proximate causation. Accordingly, the plaintiffs have standing to sue under RICO.

### B. Predicate Acts

#### 1. "Fraud in the Sale of Securities"

▮ Arthur Andersen next argues that the plaintiffs have failed to properly allege the predicate act of fraud in "the sale of securities." Section 1961(1)(D) defines "racketeering activity" to include "any offense involving ... *fraud in the sale of securities.*" 18 U.S.C. § 1961(1)(D) (emphasis added). According to Arthur Andersen, the phrase "in the sale" limits liability under RICO to actual sellers of securities, as compared with section 10(b) of the 1934 Act, which extends liability to those committing fraud "in connection" with the sale of securities. Arthur Andersen's Memorandum in Support at 54–56 (citing *In re Par Pharmaceutical, Inc. Sec. Litig.,* 733 F.Supp. 668, 683–84 (S.D.N.Y.1990) and *In re Crazy Eddie Sec. Litig.,* 792 F.Supp. 197, 204 (E.D.N.Y. 1992)). The court disagrees.

Section 1961(1)(D) neither defines "fraud in the sale of securities" nor cross-references any specific sections of the United States Code. *See Holmes,* —— U.S. at ——, 112 S.Ct. at 1325 (O'Connor, J., concurring). Furthermore, the legislative history provides no guidance on the intended scope of this language. *Id.* As a result, federal courts have diverged over which violations of the federal securities laws constitute "fraud in the sale of securities" within the meaning of section 1961(1). *See id.* at —— n. 3, 112 S.Ct. at 1325 n. 3 (collecting cases). Most notably, courts have disputed whether Congress intended "fraud in the sale of securities" to reach as broad a range of conduct as fraud "in connection with the purchase or sale of any security" under section 10(b). *Compare In re Par Pharmaceutical, Inc. Sec. Litig.,* 733 F.Supp. at 683–84 (violation of section 10(b) and Rule 10b–5 involving fraud in connection with sale of securities cannot be predicate offense) *and In re Crazy Eddie Sec. Litig.,* 792 F.Supp. 197, 204 (E.D.N.Y.1992) (Nickerson, J.) (same) *with In re Catanella and E.F. Hutton & Co.,* 583 F.Supp. 1388, 1425 n. 56 (E.D.Pa.1984) (violation of section 10(b) and Rule 10b–5 involving fraud in "purchase" of securities can be predicate offense).

In her concurrence in *Holmes,* —— U.S. at ——, 112 S.Ct. at 1326, Justice O'Connor, joined by Justices White and Stevens, cast substantial doubt on the cases holding that "fraud in the sale of securities" was intended to reach a narrower scope of conduct than section 10(b)'s fraud "in connection with the purchase or sale of any security." First, Justice O'Connor noted that in *United States v. Naftalin,* 441 U.S. 768, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979), the Court had rejected such a proposed distinction between fraud in "the offer or sale" of a security under section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a)(1), and the "in connection with" language of section 10(b). *Id.* Second, Justice O'Connor observed that any difference between the language of section 1961(1) and section 10(b) would be satisfied by the majority holding in *Holmes* that a RICO plaintiff must prove that his injuries were proximately caused by racketeering conduct. *Id.* Therefore, while Justice O'Connor and two colleagues found that section 1961(1) "unmistakably requires

that there be fraud, sufficiently willful to constitute a criminal violation of [section 32(a) of the 1934 Act],[46] and that there be a sale of securities," she concluded that section 1961(1) does not require the parties to have engaged in an executed sale. *Id.* at ——, 112 S.Ct. at 1325.

In light of Justice O'Connor's concurrence, at least one court has reversed its position that fraud in the sale of securities requires an actual sale of securities, ruling that "any violation of section 10(b) sufficiently willful to trigger penalties of section 32(a) [of the 1934 Act] constitutes 'fraud in the sale of securities.'" *In re Crazy Eddie Sec. Litig.,* 812 F.Supp. 338, 351 (E.D.N.Y.1993) (Nickerson, J.). Following the *Holmes* concurrence and the most recent decision in *In re Crazy Eddie Sec. Litig.,* this court rejects the defendants' contention that "fraud in the sale of securities" extends only to actual sellers, and concludes that nonsellers who "willfully" violate section 10(b) may be liable under RICO.

■ A defendant acts "wilfully" within the meaning of section 32(a) if he " 'act[s]' deliberately and intentionally and his acts, statements or omissions [are] not the result of innocent mistake, negligence or inadvertence or other innocent conduct." *In re Crazy Eddie Sec. Litig.,* 812 F.Supp. at 352 (quoting *United States v. Dixon,* 536 F.2d 1388, 1396 (2d Cir.1976)). With respect to a RICO predicate act based on section 12(2) of the 1933 Act, our Court of Appeals has observed that:

> willfulness may be established by a showing (1) that the defendant either (a) knowingly made false or materially incomplete misleading statements or (b) made false or materially incomplete misleading statements with respect to facts to which he had deliberately closed his eyes but which he had a duty to see, and (2) that he knew that his statements significantly increased the possibility of a sale of the securities in question.

*Metromedia v. Fugazy,* 983 F.2d 350, 364 (2d Cir.1992) (applying definition of "willfulness" under section 32(a) of 1934 Act to violation of 1933 Act).

■ In the instant case, the court has already concluded that the complaints allege that the various defendants prepared misleading financial projections and appraisals with knowledge or reckless disregard for the Colonial fraud. Therefore, the complaints adequately allege "willful" conduct by these defendants. *See In re Crazy Eddie Sec. Litig.,* 812 F.Supp. at 352 (complaint alleging that accountants drafted and certified misleading financial disclosures in deliberate disregard of fraud by corporate principals adequately alleges "willful" conduct for purposes of RICO predicate act based on a violation of section 10(b)). Accordingly, the court finds that the plaintiffs have adequately alleged the predicate act of "fraud in the sale of securities."

Furthermore, the plaintiffs have adequately alleged the predicate act of "fraud in the sale of securities" in all Related Actions, including *Matthew Pasternak v. Colonial Realty/USA Corp.,* Civil Action No. H–90–829 (JAC), *Manfred Seeman v. Citytrust,* Civil Action No. 2:91–521 (JAC), and *Susan Seeman v. Citytrust,* Civil Action No. 2:91–540 (JAC). Arthur Andersen argues that the class representatives in these three actions lack standing to assert their RICO claims because they were not purchasers or sellers of securities. *See* Arthur Andersen's Memorandum in Support at 66; Arthur Andersen's Memorandum of Law in Support of Motion of Arthur Andersen & Co. to Dismiss for Lack of Subject Matter Jurisdiction (filed Mar. 10, 1993) at 6–8.

■ There is a split of authority on the question of whether RICO, like section 10(b) of the 1934 Act, imposes a purchaser/seller requirement on plaintiffs. *See Holmes,* —— U.S. at —— n. 23, 112 S.Ct. at 1322 n. 23 (collecting cases). Although the Supreme Court granted certiorari in *Holmes* to re-

---

**46.** Justice O'Connor noted that criminal violations of the 1934 Act are not defined by section 10(b) but rather by section 32(a), which authorizes criminal penalties against "[a]ny person who willfully violates any provision of this chap-

ter (other than section 78dd–1 of this title)," 15 U.S.C. § 78ff(a) (referring to all provisions of the 1934 Act other than the one regarding foreign corrupt practices by issuers). *See Holmes,* —— U.S. at ——, 112 S.Ct. at 1324.

solve this question, the majority ultimately declined to reach it. *Id.* at ⸺ – ⸺, 112 S.Ct. at 1321–22. However, in separate concurrences, Justices O'Connor and Scalia both concluded that there is no purchaser/seller requirement under RICO because the express private right of action provided in that statute contains no such restriction. *Id.* at ⸺ – ⸺, 112 S.Ct. at 1326–27 (O'Connor, J., concurring), 1329 (Scalia, J., concurring).[47] This court is persuaded by the reasoning of Justices O'Connor and Scalia. Accordingly, the court finds that Matthew Pasternak and Susan Seeman have standing to bring their RICO claims, even though the court has ruled that they were not purchasers or sellers. *See* Intervention Ruling at 18–19 (dismissing section 10(b) claims in *Susan Seeman* and *Pasternak* ). In addition, the court finds that Philip Antupit, the class representative in *Manfred Seeman,* has standing to assert his RICO claim, without reaching the question of whether he has standing to assert his section 10(b) claim.[48]

### 2. Rule 9(b)

Arthur Andersen also argues that the plaintiffs' predicate acts fail to comply with the specificity requirements of Rule 9(b). The court disagrees.

It is well settled that Rule 9(b) applies to each of the predicate acts alleged in the plaintiffs' RICO claims. *See Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 49 (2d Cir.1987); *Gruber v. Prudential–Bache Sec., Inc.,* 679 F.Supp. at 174; *O & G Carriers, Inc. v. Smith,* 799 F.Supp. 1528, 1540 (S.D.N.Y.1992) ("All elements of a RICO claim must comply with Rule 9(b)."). In evaluating the sufficiency of the RICO allegations, this court is mindful of the Supreme Court's admonition that RICO must be construed liberally to effectuate its remedial purpose. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. at 497–98, 105 S.Ct. at 3285–86.

Accordingly, the court declines to apply Rule 9(b) in an overly mechanistic way to a complaint which is, in essence, sufficiently particular.

### a) Violation of Section 10(b).

As the court has already determined, the plaintiffs' section 10(b) claims are sufficiently particular.

### b) Violation of Section 12.

The court need not reach the question of whether the plaintiffs' section 12 claims satisfy the pleading requirements of Rule 9(b) because the plaintiffs have sufficiently alleged at least two other predicate acts. The court notes, however, that it is indeed difficult to determine exactly which violations of section 12 form the basis for the plaintiffs' RICO claims. *See, e.g.,* Gold Complaint at ¶ 218.

### c) Mail and Wire Fraud.

■ To state a claim for mail fraud or wire fraud, the complaint must allege that the defendant (1) participated in a scheme to defraud, and (2) knowingly used interstate mails or wire communications to further that scheme. *United States v. Gelb,* 700 F.2d 875, 879 (2d Cir.) (mail fraud), *cert. denied,* 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983). In the instant case, the court has already determined that the plaintiffs' allegations concerning the defendants' participation in the scheme are sufficiently particular.

■ While the plaintiffs' allegations that the defendants used the mails and wire communications to further the fraudulent scheme are admittedly less precise, they are still adequate for purposes of Rule 9(b). The plaintiffs have alleged that the limited partnership interests were marketed through telephone solicitations, brochures, newsletters, and PPMs. *See* Gold Complaint at

---

47. Justices O'Connor and Scalia both observed that the Supreme Court was not similarly restricted from imposing a purchaser/seller requirement under section 10(b) because it was interpreting a judicially-implied cause of action. *See Holmes,* ⸺ U.S. at ⸺ – ⸺, ⸺, 112 S.Ct. at 1326–27 (O'Connor, J., concurring), 1329 (Scalia, J., concurring).

48. The court need not reach the question of whether Philip Antupit has standing to bring his section 10(b) claim because any such claim is barred by the applicable statute of limitations.

¶¶ 53, 54, 57. Although the complaints do not specify any mailing dates or calling dates, the complaints do specify the offering dates of the transactions, *see* Gold Complaint at ¶ 50, from which the approximate dates of the mailing and wire communications may be inferred. *See Connors v. Lexington Ins. Co.*, 666 F.Supp. 434, 450 (E.D.N.Y.1987). There is no reason to require a greater level of specificity at this stage of the proceeding. Accordingly, the plaintiffs' mail and wire fraud allegations satisfy Rule 9(b).

### C. Participation in the Conduct of the Affairs of the Enterprise

Several non-settling defendants, including Arthur Andersen, argue that the plaintiffs have failed to allege that the defendants participated in the conduct of the affairs of the alleged racketeering enterprise, as required by section 1962(c) of RICO. The court agrees as to every defendant except Arthur Andersen.

Under section 1962(c), it is unlawful for any person "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). To state a cause of action under section 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985) (footnote omitted).

Until recently, the parameters of the "conduct" element were uncertain. In *Reves v. Ernst & Young*, —— U.S. ——, ——, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993), however, the Supreme Court clarified that " 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must participate in the operation or management of the enterprise itself." The *Reves* Court observed that "conduct" requires "some degree of direction," *id.* at ——, 113 S.Ct. at 1170, but that "an enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of management [footnote omitted]. An enterprise might also be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by

bribery." *Id.* at ——, 113 S.Ct. at 1173. At the same time, however, the Court disagreed "with the suggestion . . . that section 1962(c) requires '*significant control* over or within an enterprise.'" *Id.* at —— n. 4, 113 S.Ct. at 1170 n. 4 (citations omitted).

▬ In the original complaints, the plaintiffs do not allege that any of the non-settling defendants operated or directed the affairs of the Colonial enterprise in a manner sufficient to trigger liability under section 1962(c). Nor do the amended complaints appear to include such allegations, except perhaps as to Arthur Andersen. Therefore, the court finds that the plaintiffs have failed to plead that the non-settling defendants, with the exception of Arthur Andersen, "participat[ed], directly or indirectly, in the conduct" of the Colonial enterprise as that phrase has been interpreted by *Reves.* Accordingly, the plaintiffs' RICO claims as to these defendants must be dismissed without prejudice. The plaintiffs may amend their complaint to satisfy the pleading requirements of *Reves.*

As to Arthur Andersen, the court arrives at a different conclusion based on new allegations in the amended complaints. While the court expresses no view on whether these allegations are in fact sufficient to state a claim under RICO, they are sufficient to save the plaintiffs' RICO claims from dismissal at this stage of the litigation. Accordingly, Arthur Andersen's motion to dismiss as to the plaintiffs' RICO claims is denied, but without prejudice to renewal in due course.

### CONCLUSION

Based on the full record and for the reasons stated above, it is hereby ORDERED that:

A. All claims pursuant to section 10(b) of the 1934 Act against the identified defendants in the following Related Actions are barred by the applicable statute of limitations and accordingly, are hereby DISMISSED with prejudice:

1. *Neal v. Arthur Andersen & Co.*, 2:91–517 (JAC)
 a. Arthur Andersen
 b. Sorokin
 c. Tarlow Levy

2. *Pratt v. Colonial Realty II*, 2:91–519 (JAC)

a. Arthur Andersen

3. *Burbank v. Kostin & Co.*, 2:91–518 (JAC)

a. Kostin (any such claims of plaintiff intervenors)

4. *Holland v. Arthur Andersen & Co.*, 2:91–520 (JAC)

a. Arthur Andersen

5. *M. Seeman v. Citytrust*, 2:91–521 (JAC)

a. Arthur Andersen

6. *Skiba v. Dwelling Development Corp.*, 2:91–522 (JAC)

a. Kostin (any such claims of plaintiff intervenors)

b. Sorokin (any such claims of plaintiff intervenor)

7. *Skiba v. Colonial Realty II*, 2:91–524 (JAC)

a. Kostin

b. Sorokin

8. *Skiba v. Colonial Realty II*, 2:91–5215 (JAC)

a. Kostin

9. *Kerr v. TF Development, Inc.*, 2:91–527 (JAC)

a. CB

b. Sorokin

10. *Collins v. Colonial Realty II*, 2:91–529 (JAC)

a. Arthur Andersen

11. *Pratt v. TIG–RFA, Inc.*, 2:91–530 (JAC)

a. Arthur Andersen

b. Tarlow Levy

12. *Leiser v. Kostin & Co.*, 2:91–531 (JAC)

a. Kostin (any such claims of plaintiff intervenors)

13. *Cordo v. Colonial Realty II*, 2:91–532 (JAC)

a. Kostin

b. Blake

c. Sorokin

14. *Skiba v. Colonial Realty II*, 2:91–535 (JAC)

a. Pacowta, Fournier & Maunsell

b. Tarlow Levy

15. *Leiser v. Arthur Andersen & Co.*, 2:91–538 (JAC)

a. Arthur Andersen

16. *Kennett v. Colonial Realty II*, 2:91–544 (JAC)

a. Kostin (any such claims of plaintiff intervenors)

b. Sorokin (any such claims of plaintiff intervenors)

B. All claims pursuant to section 12(2) of the Securities Act of 1933 against the identified defendants in the following Related Actions are barred by the applicable statute of limitations, and accordingly, are hereby DISMISSED with prejudice:

1. *Neal v. Arthur Andersen & Co.*, 2:91–517 (JAC)

a. Arthur Andersen & Co.

2. *Cordo v. Colonial Realty II*, 2:91–532 (JAC)

a. Dwelling Development Corp.

C. With respect to claims pursuant to Conn.Gen.Stat. § 36–498(a)(2), the court's Endorsement Ruling on Defendants' Motions to Dismiss (filed Oct. 29, 1993) (doc # 669) is VACATED as moot. The section 36–498(a)(2) claims against the identified defendants in the following Related Actions are barred by the applicable statute of limitations, and accordingly, are hereby DISMISSED with prejudice:

1. *Skiba v. Dwelling Development Corp.*, 2:91–522 (JAC)

a. Sorokin (including any such claims of plaintiff intervenors)

2. *Leiser v. Kostin & Co.*, 2:91–531 (JAC)

a. Tarlow Levy

3. *Faulise v. Kostin & Co.*, 2:91–537 (JAC)

a. Tarlow Levy

4. *Leiser v. Arthur Andersen & Co.*, 2:91–538 (JAC)

a. Tarlow Levy

5. *Skiba v. Simons*, 2:91–539 (JAC)

a. Tarlow Levy

D. The claims pursuant to Conn.Gen.Stat. §§ 36–498(a)(1) and 36–485 against the identified defendants in the following Related Actions are barred by the applicable statute of limitations, and accordingly, are hereby DISMISSED without prejudice to the filing of an amended complaint to adequately plead fraudulent concealment: [49]

1. *Cordo v. Colonial Realty II,* 2:91–532 (JAC)

 a. Dwelling Development Corp.

2. *Daniels v. Billings Management Co.,* 2:91–541 (JAC)

 a. Billings Management Co.

E. All claims of common law fraud and negligent misrepresentation against the identified defendants in the following Related Actions are barred by the applicable statute of limitations, and accordingly, are hereby DISMISSED without prejudice to the filing of an amended complaint to adequately plead fraudulent concealment: [50]

1. *Neal v. Arthur Andersen & Co.,* 2:91–517 (JAC)

 a. Arthur Andersen

 b. Sorokin

 c. Tarlow Levy

2. *Burbank v. Kostin & Co.,* 2:91–517 (JAC)

 a. Kostin (including any such claims of plaintiff intervenors)

3. *Pratt v. Colonial Realty II,* 2:91–519 (JAC)

 a. Arthur Andersen

 b. Sorokin

4. *Holland v. Arthur Andersen & Co.,* 2:91–520 (JAC)

 a. Arthur Andersen

5. *M. Seeman v. Citytrust,* 2:91–521 (JAC)

 a. Arthur Andersen

 b. Tarlow Levy

6. *Skiba v. Dwelling Development Corp.,* 2:91–522 (JAC)

 a. Kostin (including any such claims of plaintiff intervenors)

 b. Sorokin (including any such claims of plaintiff intervenors)

7. *Ozycz v. Dwelling Development Corp.,* 2:91–523 (JAC)

 a. Tarlow Levy

 b. Schnidman

8. *Skiba v. Colonial Realty II,* 2:91–524 (JAC)

 a. Kostin

 b. Sorokin

9. *Skiba v. Colonial Realty II,* 2:91–525 (JAC)

 a. Kostin (including such claims of plaintiff intervenors)

10. *Kerr v. TF Development Inc.,* 2:91–527 (JAC)

 a. Pacowta, Fournier & Maunsell

11. *Brennan v. Colonial Realty II,* 2:91–528 (JAC)

 a. Kostin

 b. Tarlow Levy

12. *Collins v. Colonial Realty II,* 2:91–529 (JAC)

 a. Arthur Andersen

 b. Sorokin

13. *Pratt v. TIG–RFA, Inc.* 2:91–530 (JAC)

 a. Arthur Andersen

 b. Tarlow Levy

14. *Leiser v. Kostin & Co.,* 2:91–531 (JAC)

 a. Kostin (including any such claims of plaintiff intervenors)

 b. Tarlow Levy

15. *Cordo v. Colonial Realty II,* 2:91–532 (JAC)

 a. Blake

 b. Dwelling Development

 c. Kostin

 d. Sorokin

16. *Skiba v. Colonial Realty II,* 2:91–533 (JAC)

---

49. The court notes that the plaintiffs have already filed amended complaints consistent with this ruling and order.

50. The court notes that the plaintiffs have already filed amended complaints consistent with this ruling and order.

a. Kostin

b. Tarlow Levy

17. *Skiba v. Colonial Realty II*, 2:91–535 (JAC)

a. Pacowta, Fournier & Maunsell

b. Tarlow Levy

18. *Faulise v. Kostin & Co.*, 2:91–537 (JAC)

a. Kostin

b. Tarlow Levy

19. *Leiser v. Arthur Andersen & Co.*, 2:91–538 (JAC)

a. Arthur Andersen

b. Tarlow Levy

20. *Skiba v. Simons*, 2:91–539 (JAC)

a. Tarlow Levy

21. *S. Seeman v. Citytrust*, 2:91–540 (JAC)

a. Arthur Andersen

b. Tarlow Levy

22. *Skiba v. Colonial Realty II*, 2:01–542 (JAC)

a. Schnidman

b. Tarlow Levy

23. *Kennett v. Colonial Realty II*, 2:91–544 (JAC)

a. Kostin (including any such claims of plaintiff intervenors)

b. Sorokin (including any such claims of plaintiff intervenors)

F. All claims of breach of fiduciary duty in the following Related Actions are barred by the applicable statute of limitations, and accordingly, are DISMISSED without prejudice to the filing of an amended complaint to adequately plead fraudulent concealment:

1. *Pratt v. Colonial Realty II*, 2:91–519 (JAC)

a. Sorokin

2. *M. Seeman v. Citytrust*, 2:91–521 (JAC)

a. Tarlow Levy

3. *Skiba v. Dwelling Development Corp.*, 2:91–522 (JAC)

a. Sorokin (including any such claims of plaintiff intervenors)

4. *Ozycz v. Dwelling Development Corp.*, 2:91–523 (JAC)

a. Tarlow Levy

5. *Skiba v. Colonial Realty II*, 2:91–524 (JAC)

a. Sorokin

6. *Brennan v. Colonial Realty II*, 2:91–528 (JAC)

a. Tarlow Levy

7. *Collins v. Colonial Realty II*, 2:91–529 (JAC)

a. Sorokin

8. *Pratt v. TIG–RFA, Inc.*, 2:91–530 (JAC)

a. Tarlow Levy

9. *Leiser v. Kostin & Co.*, 2:91–531 (JAC)

a. Tarlow Levy

10. *Cordo v. Colonial Realty II*, 2:91–532 (JAC)

a. Dwelling Development Corp.

b. Sorokin

11. *Skiba v. Colonial Realty II*, 2:91–533 (JAC)

a. Tarlow Levy

12. *Skiba v. Colonial Realty II*, 2:91–535 (JAC)

a. Tarlow Levy

13. *Faulise v. Kostin & Co.*, 2:91–537 (JAC)

a. Tarlow Levy

14. *Leiser v. Arthur Andersen & Co.*, 2:91–538 (JAC)

a. Tarlow Levy

15. *Skiba v. Simons*, 2:91–539 (JAC)

a. Tarlow Levy

16. *S. Seeman v. Citytrust*, 2:91–540 (JAC)

a. Tarlow Levy

17. *Skiba v. Colonial Realty II*, 2:91–542 (JAC)

a. Tarlow Levy

18. *Kennett v. Colonial Realty II*, 2:91–544 (JAC)

a. Sorokin (including any such claims of plaintiff intervenors)

G. In all those Related Actions in which the amended complaints (filed Dec. 30, 1993) include federal claims against Kostin, the

Endorsement Ruling on Defendants' Motions to Dismiss (Oct. 29, 1993) (doc. # 669) is VACATED to the extent it dismissed state law claims against Kostin pursuant to Fed. R.Civ.P. 12(b)(1), without prejudice to renewal in an appropriate forum. Kostin's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is hereby DENIED.

H. All state law claims against the identified defendants in the following Related Actions are hereby DISMISSED pursuant to Fed.R.Civ.P. 12(b)(1) without prejudice to renewal in an appropriate forum:

1. *Kerr v. TF Development, Inc.,* 2:91-527 (JAC)

 a. CB

2. *Skiba v. Colonial Realty II,* 2:91-533 (JAC)

 a. American Appraisal

I. In all Related Actions which contain claims pursuant to Conn.Gen.Stat. § 36-498(b) against any of the non-settling defendants, such claims are hereby DISMISSED with prejudice.

J. In all Related Actions which contain claims pursuant to RICO, 18 U.S.C. § 1961 *et seq.,* such claims are hereby DISMISSED as to all non-settling defendants except Arthur Andersen, without prejudice to the filing of an amended complaint to allege that these defendants "participat[ed] in the conduct" of the Colonial enterprise's affairs, *see* 18 U.S.C. § 1962(c), as that phrase has been interpreted by the Supreme Court in *Reves v. Ernst & Young,* — U.S. —, —, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993).

In all other respects, the motions to dismiss of the non-settling defendants are hereby DENIED with prejudice, and the motions to dismiss of the settling defendants are hereby DENIED without prejudice to reinstatement upon the filing of a simple notice in the event that settlement negotiations fail. Such a notice need only contain the name, filing date, and document number of the motion.

This ruling explains and effectively supersedes the previous Endorsement Ruling on Defendants' Motions to Dismiss (filed Oct. 29, 1993) (doc. # 669).

It is so ordered.